IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

---

**STATE OF ARIZONA,**
*Appellee,*

*v.*

**DALE LEE EVANS,**
*Appellant.*

---

No. CR-14-0285-PR
Filed June 4, 2015

---

Appeal from the Superior Court in Cochise County
The Honorable Wallace R. Hoggatt, Judge
No. CR-200500455
**AFFIRMED**

---

Opinion of the Court of Appeals, Division Two
235 Ariz. 314, 332 P.3d 61 (2014)
**AFFIRMED**

---

COUNSEL:

Mark Brnovich, Arizona Attorney General, John R. Lopez IV, Solicitor General, Joseph T. Maziarz (argued), Chief Counsel, Criminal Appeals Section, Phoenix, Amy Pignatella Cain, Assistant Attorney General, Criminal Appeals Section, Tucson, Attorneys for State of Arizona

Joel A. Larson (argued), Legal Defender, Cochise County, Bisbee, Attorney for Dale Lee Evans

David J. Euchner, Tucson, Attorney for Amicus Curiae Arizona Attorneys for Criminal Justice

---

JUSTICE BERCH authored the opinion of the Court, in which CHIEF JUSTICE BALES, VICE CHIEF JUSTICE PELANDER, and JUSTICES

BRUTINEL and TIMMER joined.

JUSTICE BERCH, opinion of the Court:

¶1        The Fourth Amendment guarantees "[t]he right of the people to be secure . . . against unreasonable searches and seizures."  U.S. Const. amend. IV.  An officer's investigatory stop of a vehicle is a seizure and therefore must be based on reasonable suspicion.  *United States v. Cortez*, 449 U.S. 411, 417, 421–22 (1981).  We must decide whether, to establish that reasonable suspicion exists, the state must show that the circumstances giving rise to a vehicle stop "eliminate a substantial portion of the innocent motoring public," as petitioner Dale Evans asserts.  We conclude that the Fourth Amendment does not require such a showing.

## I.  BACKGROUND

¶2        Cochise County Deputy Sheriff Dana Anderson saw Evans, who was the driver of a truck stopped at a stop sign on an adjoining street, "[f]lailing his arms" with closed fists toward the truck's front seat passenger.  Anderson alerted his partner to a potential assault and instructed him to turn around.  As the patrol car approached, Evans drove away from the intersection.  The deputies initiated a traffic stop that ultimately led to Evans's arrest for possession of marijuana, possession of

drug paraphernalia, and aggravated driving under the influence. Before trial, Evans moved to suppress the evidence on the ground that the deputies lacked reasonable suspicion to pull him over.

¶3          At the suppression hearing, Anderson testified that he could clearly see the truck's driver direct three rapid, closed-fisted movements toward the passenger. He demonstrated the arm movements he witnessed. Defense counsel asked during cross-examination if Anderson had seen "blows" actually being struck, and thus the motions Anderson demonstrated apparently suggested punching or hitting. The deputy acknowledged that he did not see contact between Evans's fists and the passenger. Nonetheless, he was concerned enough that he directed his partner to turn the patrol car around so they could investigate further.

¶4          The trial court denied Evans's motion to suppress, finding that "the arm movements, though they might not have been criminal activity, were articulable facts that justified the Officers in trying to find out more." The court of appeals affirmed the trial court's denial of Evans's suppression motion. *State v. Evans*, 235 Ariz. 314, 315 ¶ 1, 332 P.3d 61, 62 (App. 2014). Deferring to the trial court's ability to view Anderson's demonstration of the actions that aroused his suspicion, *id.* at 317 ¶ 8, 332

P.3d at 64, the court of appeals declined to require that "every stop be supported by testimony regarding how the factors 'serve to eliminate' innocent conduct" before reasonable suspicion will be satisfied, *id.* at 320 ¶ 22, 332 P.3d at 67 (quoting *United States v. Foreman*, 369 F.3d 776, 781 (4th Cir. 2004)).

**¶5** We granted review to clarify what constitutes reasonable suspicion sufficient to justify an investigatory stop, a recurring issue of statewide importance. We have jurisdiction pursuant to Article 6, Section 5(3) of the Arizona Constitution and A.R.S. § 12–120.24.

## II. DISCUSSION

**¶6** Whether there is a sufficient legal basis to justify a stop of a vehicle is a mixed question of fact and law. *State v. Gonzalez-Gutierrez*, 187 Ariz. 116, 118, 927 P.2d 776, 778 (1996). We review the trial court's factual findings on the motion to suppress for an abuse of discretion, but we review its ultimate legal determination de novo. *Id.*; *see also State v. Gilstrap*, 235 Ariz. 296, 297 ¶ 6, 332 P.3d 43, 44 (2014).

**¶7** "[P]olice can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable

4

cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). Although the reasonable suspicion standard affords flexibility, investigatory stops cannot be arbitrary. "The Fourth Amendment requires 'some minimal level of objective justification' for making the stop." *Id.* (quoting *INS v. Delgado*, 466 U.S. 210, 217 (1984)).

¶8 Courts have struggled to articulate when evidence rises to a level that satisfies the reasonable suspicion standard. *See Ornelas v. United States*, 517 U.S. 690, 695 (1996) (noting that "[a]rticulating precisely what 'reasonable suspicion' and 'probable cause' mean is not possible"). Reasonable suspicion has been called a "commonsense, nontechnical conception[] that deal[s] with 'the factual and practical considerations of everyday life on which reasonable and prudent [people], not legal technicians, act.'" *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 231 (1983)). In determining whether reasonable suspicion exists, officers and courts reviewing their actions take into account "the totality of the circumstances—the whole picture" of what occurred at the scene. *Cortez*, 449 U.S. at 417. From "that whole picture" the officers must derive "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Id.* at 417–18. Although a mere

"unparticularized suspicion or 'hunch'" does not establish reasonable suspicion, consideration "must be given . . . to the specific reasonable inferences [that an officer] is entitled to draw from the facts in light of his experience." *Terry*, 392 U.S. at 27.

¶9        Citing several cases, Evans argues that the state must show that the "factors together . . . serve to eliminate a substantial portion of innocent travelers before the requirement of reasonable suspicion will be satisfied." *See, e.g., United States v. Neff*, 681 F.3d 1134, 1142 (10th Cir. 2012); *Foreman*, 369 F.3d at 781; *Karnes v. Skrutski*, 62 F.3d 485, 493 (3d Cir. 1995), *abrogated on other grounds by Curley v. Klem*, 499 F.3d 199 (3d Cir. 2007). That is, his argument suggests that officers must affirmatively consider the number of people who might engage in the activity observed so that significant percentages of innocent travelers are not subject to seizures.

¶10       We view the constitutional requirements differently. To say that an officer must have "particularized" suspicion incorporates the notion that the facts supporting a stop must be specific, distinct, or "particular" to the suspect. That alone will eliminate most members of the public. *See Reid v. Georgia*, 448 U.S. 438, 441 (1980) (noting that particularized suspicion necessarily does not "describe a very large category of presumably innocent

6

travelers"). And that most non-criminal activity does not give rise to "suspicion" also serves to prevent the reported facts from applying to too many people. *Cf. Gonzalez-Gutierrez*, 187 Ariz. at 121, 927 P.2d at 781 (holding that a Hispanic driver glancing, scratching his head, and gripping his steering wheel tightly was insufficiently particularized to provide a reasonable suspicion of illegal alienage). Thus, the requirement that an officer state facts that, when taken together, give rise to particularized suspicion already serves to eliminate a substantial number of innocent travelers.

¶11         Nor, as Evans concedes, need the officer expressly rule out the possibility of innocent explanations for the conduct. *See United States v. Arvizu*, 534 U.S. 266, 277 (2002). "Although there could, of course, be circumstances in which wholly lawful conduct might justify the suspicion that criminal activity was afoot," that would be an unusual case, and the combination of actions and circumstances would have to be such that a "fair inference" justified the observing officer's reasonable suspicion. *Reid*, 448 U.S. at 441; *cf. Sokolow*, 490 U.S. at 10 ("[T]he relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." (quoting *Gates*, 462 U.S. at

243 n.13)).

¶12        Particularized suspicion is a common sense assessment that officers make every time they conduct an investigatory stop. If all the circumstances taken together, along with the reasonable inferences derived from them, describe behavior that is entirely ordinary, then that behavior cannot reasonably give rise to particularized suspicion. In deciding that behavior is, in the totality of the circumstances, suspicious, a reasonable officer recognizes that the circumstances are atypical in a way that suggests possible criminal conduct.

¶13        Thus, the reasonableness standard does not demand that an officer affirmatively "consider the number of innocent travelers who might engage in similar behaviors," *Evans*, 235 Ariz. at 320 ¶ 20, 332 P.3d at 67, nor does it require that the officer rule out possible alternative, innocent explanations for the actions observed, *Navarette v. California*, 134 S. Ct. 1683, 1691 (2014). It requires only that an officer exercise common sense to determine whether the facts justify an objectively reasonable suspicion. *Ornelas*, 517 U.S. at 695–96.

¶14        We agree with the court of appeals that there is no "additional requirement" that every stop be supported by testimony regarding how the

factors "serve to eliminate" innocent conduct. *Evans*, 235 Ariz. at 320 ¶ 22, 332 P.3d at 67 (quoting *Foreman*, 369 F.3d at 781). Officers need not provide such testimony at suppression hearings, and trial courts need not make separate findings on that point. Instead, the trial court must exercise its judgment to determine whether an officer's suspicion was reasonable under the totality of the circumstances. This is what occurred when the superior court concluded that Anderson's observation of Evans appearing to punch his passenger justified an investigatory stop. Although there might have been an innocent explanation for Evans's actions, the court did not abuse its discretion in concluding that Anderson had reason to suspect that an assault or domestic violence event was occurring that warranted further investigation.

¶15        Evans observes that two Arizona cases—*State v. Sweeney*, 224 Ariz. 107, 113 ¶ 22, 227 P.3d 868, 874 (App. 2010), and *State v. Teagle*, 217 Ariz. 17, 24 ¶ 25, 170 P.3d 266, 273 (App. 2007)—have cited with approval *Foreman*'s "serve to eliminate" language, 369 F.3d at 781. He asserts that the court of appeals' disavowal of that language in this case has created a split of authority on the court of appeals.

¶16        We do not read either *Teagle* or *Sweeney*, which merely quote

the cited language from *Foreman*, as creating a rule requiring a separate showing. The court of appeals in this case read them similarly, disavowing the "serve to eliminate" language in *Foreman* only insofar as it "articulates a standard not present in *Sokolow*[]." *Evans*, 235 Ariz. at 319 ¶ 16, 332 P.3d at 66. It correctly held that "[w]hen determining whether reasonable suspicion exists, the police are not required to rule out the possibility of innocent explanations for a defendant's conduct." *Id.* at 320 ¶ 19, 332 P.3d at 67 (quoting *State v. Ramsey*, 223 Ariz. 480, 485 ¶ 23, 224 P.3d 977, 982 (App. 2010)).

¶17        We hold that reasonable suspicion under the Fourth Amendment does not require officers to testify about how their observations reduce or eliminate the possibility that innocent travelers will be subject to seizures or trial courts to make specific findings on that issue. Objectively reasonable, particularized suspicion of criminal activity necessarily will reduce the risk of sweeping in a substantial number of innocent travelers.

### III.  CONCLUSION

¶18        We affirm the opinion of the court of appeals and the trial court's denial of Evans's motion to suppress.