NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

SHAD PARIS GARCIA, *Appellant*.

No. 1 CA-CR 14-0580
FILED 11-19-2015

Appeal from the Superior Court in Maricopa County
No.  CR2013-430839-001
The Honorable Virginia L. Richter, Judge Pro Tem

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jana Zinman
*Counsel for Appellee*

Coppersmith Brockelman PLC, Phoenix
By Scott M. Bennett, D. Andrew Gaona
*Counsel for Appellant*

**MEMORANDUM DECISION**

Judge John C. Gemmill delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Kent E. Cattani joined.

**G E M M I L L**, Judge:

¶1        Defendant Shad Paris Garcia appeals his convictions and sentences for one count of possession of dangerous drugs, a class 4 felony, and one count of possession of drug paraphernalia, a class 6 felony.  Garcia argues that the trial court abused its discretion when it denied his motion to suppress evidence on the basis that the police had illegally stopped his vehicle.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        On July 1, 2013, two Phoenix Police officers responded to a call regarding a deceased dog at a residence on North 83rd Drive ("the residence").  Upon arrival, Officers J.B. and J.T. met with the caller ("A.S."), who led both officers to the patio and the deceased dog.  According to one of the officers, A.S. told the officers about a police report he had filed on June 28, 2013, regarding an altercation that happened while he was walking the dog.  The dog had scratched a small boy, and a man who was with the boy became angry and pulled a gun on A.S.

¶3        After determining the dog had likely died from heat exposure and dehydration, the officers returned to their patrol car parked near the residence and contacted animal control.  While the officers were inside their car, A.S. came outside, pointed at a white car passing by, and told the officers "that's the guy who pointed the gun at me."

¶4        Both officers saw the car A.S. pointed out as it made a right turn onto 83rd Avenue.  The car appeared to Officer J.B. to be a white Cadillac.  Although the officers lost sight of the car for approximately 30 to 60 seconds while making a U-turn to follow it, they quickly turned right onto 83rd Avenue, heading south, and regained sight of what appeared to be the same car traveling in the same direction.  The officers did not see any other cars nearby that matched the appearance of car they had seen.  After following the car for some distance, the officers got close enough to confirm it was the car A.S. had pointed out, and Officer J.B. initiated a traffic stop.  After asking Garcia to get out of the vehicle, the officers conducted two patdown searches to check for weapons.  During the second patdown search, the officers found a sunglasses case containing drug paraphernalia.

¶5        At an evidentiary hearing on Garcia's suppression motion, Garcia admitted he drove past the residence on July 1, 2013, saw the police

patrol car parked outside, and turned onto 83rd Avenue.[1]  After the hearing, the trial court denied the motion and found the officers had reasonable suspicion to conduct a lawful investigatory stop, because A.S.'s various statements to the officers gave them an objective basis to believe that a person in the white car had committed an assault on June 28, 2013.

¶6        Garcia waived his right to a jury trial and, following a bench trial, the court convicted him of possession of dangerous drugs and possession of drug paraphernalia.  The trial court sentenced Garcia to concurrent, presumptive sentences of 10 years for possession of dangerous drugs and 3.75 years for possession of drug paraphernalia.  Garcia timely appeals.  We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031 and 13-4033.

## DISCUSSION

¶7        Garcia argues that the trial court erred when it denied his motion to suppress evidence based on an illegal stop.  Specifically, he asserts his constitutional rights were violated when the officers conducted an investigatory stop of his vehicle without a "particularized and objective" basis establishing reasonable suspicion because: (1) the officers had no "identifying information" about Garcia's car; (2) the officers lost sight of the car for 30 to 60 seconds; and (3) Garcia's car may not have been the only white car traveling south on 83rd Avenue at that time.  Garcia contends that because the stop was unlawful, any evidence collected thereafter should have been suppressed, and his drug-related convictions and sentences should therefore be vacated.

¶8        Because the question of whether "there is a sufficient legal basis to justify a stop of a vehicle is a mixed question of fact and law," we review de novo a trial court's decision on a motion to suppress evidence, and we review the trial court's factual findings for an abuse of discretion. *State v. Evans*, 237 Ariz. 231, 233, ¶6 (2015); *see State v. Boteo-Flores*, 230 Ariz. 105, 107, ¶11 (2012); *State v. Teagle*, 217 Ariz. 17, 22, ¶ 19 (App. 2007).

---

[1] The prosecutor used the word "street" in a question that Garcia answered affirmatively, according to the transcript.  But based on the record as a whole, we conclude it is clear that the prosecutor and Garcia meant 83rd "Avenue" rather than 83rd "Street."

¶9 The Fourth Amendment to the United States Constitution provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend IV; *Teagle*, 217 Ariz. at 22, ¶ 20. Because an investigatory stop constitutes a seizure, it is protected by the Fourth Amendment, and under *Terry v. Ohio*, 392 U.S. 1, 30 (1968), a police officer may conduct an investigatory stop without probable cause only "if the officer has an articulable, reasonable suspicion, based on the totality of the circumstances, that the suspect is involved in criminal activity." *Teagle*, 217 Ariz. at 22–23, ¶ 20; *see also United States v. Hensley*, 469 U.S. 221, 229 (1985) (holding that if the police have "a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony, then a *Terry* stop may be made to investigate that suspicion.").

¶10 To determine whether there was reasonable suspicion justifying a stop, reviewing courts assess law enforcement officers' actions based on "the totality of the circumstances—the whole picture" of what occurred at the scene. *United States v. Cortez*, 449 U.S. 411, 417 (1981). In so doing, the court gives consideration "'to the specific reasonable inferences [that an officer] is entitled to draw from the facts in light of his experience.'" *Evans*, 237 Ariz. 231, 234, ¶ 8 (quoting *Terry*, 392 U.S. at 27). Mere "unparticularized suspicion[s] or hunch[es]" do not establish reasonable suspicion, and "officers must derive a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Evans*, 237 Ariz. at 234, ¶ 8 (internal quotations omitted). The reasonableness standard requires that an officer "exercise common sense to determine whether the facts justify an objectively reasonable suspicion." *Id.* at 235, ¶ 13 (citing *Ornelas v. United States*, 517 U.S. 690, 695–96 (1996)).

¶11 In the instant case, the officers who stopped Garcia had a particularized and objective basis for suspecting that someone in the white vehicle they stopped had been involved in criminal activity. Garcia does not dispute that the officers were aware of the previously reported June 28, 2013, incident when A.S. pointed to the white vehicle passing by and yelled out that the man who had assaulted him was in it. It is also undisputed that the officers saw the white car A.S. pointed out, and that they saw the same car turn southbound onto 83rd Avenue before losing sight of it for 30 to 60 seconds. After making a U-turn and then turning south onto 83rd Avenue, the officers saw the only southbound car on 83rd Avenue in the "immediate vicinity" that looked like the car A.S. had pointed out; and the officers initiated the stop only after getting close enough to determine with

confidence that it was the same car they had seen initially. Officer J.B. described it as a "white older boxy vehicle" that "appeared to have the rear end of a Cadillac."

**¶12** Garcia argues that the officers did not have a particularized and objective basis for reasonable suspicion because they did not know the make, model, or license plate number of the vehicle they were looking for when they first started following the white car on 83rd Avenue. Garcia relies on *State v. Gomez*, 198 Ariz. 61, 62, ¶ 3 (App. 2000), in which the court found that a 9-1-1 call identifying a vehicle engaged in criminal activity by its "color, make, license plate number" and direction of travel established reasonable suspicion to initiate a *Terry* stop. But in this case, those descriptive details were not essential because the officers themselves saw the vehicle A.S. had pointed out, and they reasonably believed they had stopped that same vehicle, based on having seen it previously.

**¶13** Finally, the possibility that there could have been other white cars traveling south on 83rd Avenue does not negate the officers' particularized and objective basis for suspecting someone in this specific vehicle of criminal activity. The officers made reasonable inferences in light of their experience, and the facts available to them at that time supported an objectively reasonable suspicion based on the totality of the circumstances.

**¶14** Garcia also cites *United States v. Jaquez*, 421 F.3d 338, 340 (5th Cir. 2005), to argue that the facts here were insufficient to support reasonable suspicion. In *Jaquez*, a dispatcher indicated that a red vehicle had been involved in an accident approximately 15 minutes earlier, in the same area where the officer spotted the vehicle she ultimately stopped. 421 F.3d at 341. The court noted that the information about the car's color, by itself, was "sparse and broadly generic" and concluded that the information was "insufficient to support a determination of reasonable suspicion, as required under *Terry*" without "any particular information about the vehicle, such as its make or model, or any description of its occupant(s)." *Id.* This case is distinguishable from *Jaquez*, however. Unlike the dispatcher in *Jaquez* who did not see the suspected red vehicle before relaying information to the officers in the field, A.S. was with the officers when he saw Garcia pass by and pointed out the white vehicle.

## CONCLUSION

¶15 Because the investigatory stop was supported by reasonable suspicion, the trial court did not err in denying Garcia's motion to suppress. For this reason, we affirm Garcia's convictions and sentences.



**Ruth A. Willingham** · **Clerk of the Court**
F I L E D : ama