IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

---

**STATE OF ARIZONA,**
*Appellant,*

*v.*

**CHRISTIAN ADAIR,**
*Appellee.*

---

No. CR-15-0337-PR
Filed November 22, 2016

---

Appeal from the Superior Court in Maricopa County
The Honorable Robert L. Gottsfield, Judge (Retired)
No. CR2013-111090
**REVERSED**

---

Opinion of the Court of Appeals, Division One
238 Ariz. 193, 358 P.3d 614 (App. 2015)
**VACATED**

---

COUNSEL:

William G. Montgomery, Maricopa County Attorney, Lisa Marie Martin (argued), Deputy County Attorney, Phoenix, Attorneys for State of Arizona

James J. Haas, Maricopa County Public Defender, Mikel Steinfeld (argued), Deputy Public Defender, Phoenix, Attorneys for Christian Adair

David J. Euchner, Pima County Public Defender's Office, Tucson, and Rhonda E. Neff, Kimerer & Derrick P.C., Phoenix, Attorneys for Amici Curiae Arizona Attorneys for Criminal Justice

---

VICE CHIEF JUSTICE PELANDER authored the opinion of the Court, in which CHIEF JUSTICE BALES and JUSTICES BRUTINEL, TIMMER, and BOLICK joined.

_____

VICE CHIEF JUSTICE PELANDER, opinion of the Court:

¶1        This case concerns the constitutional standards that apply to a warrantless search of a probationer's residence.  We hold that such a search complies with the Fourth Amendment if it is reasonable under the totality of the circumstances and that its legality does not hinge on whether the search is supported by reasonable suspicion.

**I.**

¶2        In March 2012, the superior court placed Christian Adair on supervised probation for two felony convictions for solicitation to possess crack cocaine for sale.  Under his court-imposed, uniform probation conditions, Adair agreed to "submit to search and seizure of person and property" by the probation department "without a search warrant," and to provide the probation department "safe, unrestricted access to" his residence.  The probation conditions also required Adair to obey all laws and to not possess or use any firearms, ammunition, illegal drugs, or controlled substances.

¶3        In late December 2012, an informant told police that Adair was on probation for selling drugs to an undercover officer and the informant thought Adair was still selling crack cocaine.  The informant did not want to be named in any police report but gave the police his name, birthdate, and address.  Over the next several months the informant continued to contact police and indicated that Adair's young child might have accompanied him during narcotic sales.  A police officer confirmed that Adair was on probation for selling drugs to an undercover officer and had a child with him during one such transaction and that Adair lived at the address the informant provided.

¶4        After receiving the above information from police, the probation department conducted a warrantless search of Adair's residence in March 2013 pursuant to his probation conditions.  At the probation department's request, police accompanied probation officers on the search.

Adair was home when the officers conducted the search. The officers entered and seized crack cocaine, scales, packaging materials, about $450 in cash, a gun, and ammunition.

¶5        Adair was charged with felony possession of narcotic drugs for sale, possession of drug paraphernalia, and misconduct involving weapons. The probation officer also filed a petition to revoke Adair's probation. Adair moved to suppress the items seized during the search, arguing that it was a warrantless, pretextual police search, not a search by probation officers under the probation conditions. After an evidentiary hearing, the trial court rejected that argument.

¶6        In a motion for reconsideration, Adair argued that the evidence should be suppressed because the probation officers lacked "reasonable suspicion" for the search. The trial court reconsidered and ruled that "[a] probation search must be supported by a reasonable suspicion, or a reasonable basis, or reasonable grounds to believe the probationer has violated the terms of his probation or is engaging in criminal activity," standards the court deemed "synonymous in the probation search context." Concluding that the search did not meet those standards or have a sufficient legal basis, the court granted the motion to suppress.

¶7        The court of appeals disagreed with the standards the trial court applied and instead held that "reasonableness under the totality of the circumstances satisfies the Fourth Amendment when analyzing the probation officer's warrantless search of a probationer's residence undertaken pursuant to the Probation Conditions." *State v. Adair*, 238 Ariz. 193, 199 ¶ 20, 358 P.3d 614, 620 (App. 2015). The court vacated the order granting the motion to suppress and remanded to the superior court "to determine whether the probation officer's warrantless search of Adair's residence and resulting seizure of contraband was reasonable under the totality of the circumstances." *Id.*

¶8        We granted review to clarify the constitutional standards governing a warrantless search of a probationer's residence, a recurring legal issue of statewide importance. This Court has jurisdiction under article 6, section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.

## II.

**¶9**         We review a trial court's ruling on a motion to suppress for abuse of discretion, considering only the evidence presented at the suppression hearing and viewing the facts in a light most favorable to sustaining the trial court's ruling. *State v. Butler*, 232 Ariz. 84, 87 ¶ 8, 302 P.3d 609, 612 (2013). "An error of law constitutes an abuse of discretion," *State v. Bernstein*, 237 Ariz. 226, 228 ¶ 9, 349 P.3d 200, 202 (2015), and "a suppression order based on an incorrect legal standard may be reversed," *State v. Peters*, 189 Ariz. 216, 218, 941 P.2d 228, 230 (1997). Although we generally defer to a trial court's factual findings if reasonably supported by the evidence, we review its ultimate legal determination de novo. *State v. Evans*, 237 Ariz. 231, 233 ¶ 6, 349 P.3d 205, 207 (2015). Whether reasonable suspicion is required to authorize a warrantless search of a probationer's residence is a question of law, which we review de novo. *See State v. Serna*, 235 Ariz. 270, 272 ¶ 7, 331 P.3d 405, 407 (2014).

**¶10**         We first clarify what is not at issue here. This case does not involve a random or suspicionless search, and thus we do not decide today whether a probation officer's warrantless search of a probationer's residence may be valid absent any suspicion whatsoever of illegal activity or other probation violation. *Cf. State v. Ballard*, 874 N.W.2d 61, 72 ¶¶ 40-41 (N.D. 2016) (holding that deputy's warrantless, "suspicionless search" of probationer's person and home violated Fourth Amendment rights of probationer subject to "minimal unsupervised probation conditions" for two misdemeanors).

**¶11**         Nor does this case involve consent, a well-established exception to the Fourth Amendment's warrant requirement. *Butler*, 232 Ariz. at 87 ¶ 13, 302 P.3d at 612 (voluntary consent permits warrantless search). The State does not argue that Adair expressly or impliedly consented to the search of his house, based on the probation conditions or otherwise. *Cf. Illinois v. Absher*, 950 N.E.2d 659, 668 (Ill. 2011) (holding that defendant's agreement, as part of negotiated guilty plea, to submit to probationary searches at any time "constituted prospective consent" and valid waiver of Fourth Amendment privacy rights).

**¶12**         Given the trial court's now uncontested ruling (supported by the record) that the search "was not a mere pretext for conducting a criminal investigation by the police," we also do not address the constitutionality of a law enforcement officer's warrantless search of a probationer's residence. In addition, Adair does not challenge the validity or enforceability of the

4

court-imposed probation conditions to which he agreed and was subject. In *State v. Montgomery*, this Court rejected the defendant's Fourth Amendment challenge to a probation condition that provided he would "[s]ubmit to search and seizure of person or property at any time by any police officer or probation officer without the benefit of a search warrant." 115 Ariz. 583, 583, 566 P.2d 1329, 1329 (1977). Noting a probationer's reduced expectation of privacy, we found that provision neither overbroad nor "an unreasonable or an unconstitutional limitation upon his right to be free from unreasonable searches and seizures." *Id.* at 584-85, 566 P.2d at 1330-31. The continued vitality of *Montgomery* is not questioned here.

## III.

¶13        The Fourth Amendment protects "persons [and their] houses . . . against unreasonable searches and seizures." U.S. Const. amend. IV. Because "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed," law enforcement officers generally may not enter, much less search, a person's home without a warrant. *Payton v. New York*, 445 U.S. 573, 585, 590 (1980). "The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" *United States v. Knights*, 534 U.S. 112, 118-19 (2001) (quoting *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999)); *see also Maryland v. King*, 133 S. Ct. 1958, 1969 (2013) ("[T]he ultimate measure of the constitutionality of a governmental search is reasonableness.") (internal quotation marks omitted).

¶14        "The question of whether a warrantless probationary search may be carried out without a showing of probable cause or reasonable suspicion is one that has divided other courts." *Ballard*, 874 N.W.2d at 74 ¶ 54 (Sandstrom, J., dissenting); *see also id.* at 76-77 ¶ 60 (citing comparative cases). The United States Supreme Court has not resolved that question, but three of its cases shed some light on the issue.

¶15        In *Griffin v. Wisconsin*, the Court observed that "[a] probationer's home, like anyone else's, is protected by the Fourth Amendment's requirement that searches be 'reasonable.'" 483 U.S. 868, 873 (1987). But the special needs of a state's probation system, a probationer's

conditional liberty interests, and society's interests in rehabilitation and public safety justify departures from the usual probable-cause and warrant requirements. *Id.* at 874-76. Thus, the Court in *Griffin* held that the warrantless search of a probationer's residence "was 'reasonable' within the meaning of the Fourth Amendment because it was conducted pursuant to a valid [state] regulation governing probationers" that permitted such searches on "reasonable grounds." *Id.* at 876, 880. Because a probationer "is in need of rehabilitation and is more likely than the ordinary citizen to violate the law," the Court observed, the Fourth Amendment is satisfied "if the information provided [to the probation department] indicates . . . only the likelihood ([the probationer] 'had or might have guns') of facts justifying the search." *Id.* at 880.

¶16        Similarly, in *Knights* the Court held that the warrantless search of a probationer's apartment, "supported by reasonable suspicion and authorized by a condition of probation, was reasonable within the meaning of the Fourth Amendment." 534 U.S. at 122. There, as here, a probation condition authorized a warrantless search of the probationer's residence. *Id.* at 114. Noting that the probation condition "significantly diminished Knights' reasonable expectation of privacy," and that the state's interest in apprehending criminals and protecting potential victims may justify treating probationers differently than ordinary citizens, the Court held "that the balance of these considerations requires no more than reasonable suspicion to conduct a search of this probationer's house." *Id.* at 120-21. The Court, however, expressly did not "decide whether the probation condition so diminished, or completely eliminated, Knights' reasonable expectation of privacy . . . that a search by a law enforcement officer without any individualized suspicion would have satisfied the reasonableness requirement of the Fourth Amendment." *Id.* at 120 n.6; *see also Samson v. California*, 547 U.S. 843, 850 (2006) (stating that *Knights* "did not reach the question whether the search would have been reasonable under the Fourth Amendment had it been solely predicated upon the condition of probation").

¶17        Five years after *Knights*, the Court in *Samson* held that "the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee." 547 U.S. at 857. The Court stated that "parolees are on the 'continuum' of state-imposed punishments" and, on that continuum, "have fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation is to

imprisonment." *Id.* at 850. Based on his parolee "status alone" and the "plain terms of the parole search condition," the Court concluded that Samson "did not have an expectation of privacy that society would recognize as legitimate." *Id.* at 852. And far outweighing Samson's interests were the state's substantial interests, including closely supervising parolees because they are more likely to commit future crimes, and "reducing recidivism and thereby promoting reintegration and positive citizenship among probationers and parolees." *Id.* at 853.

## IV.

**¶18**         Considering the holdings and reasoning in that trilogy of Supreme Court cases, we agree with the court of appeals that in assessing whether the probation officers' warrantless search of Adair's residence was lawful, "reasonableness under the totality of the circumstances satisfies the requirements of the Fourth Amendment." *Adair*, 238 Ariz. at 194 ¶ 1, 358 P.3d at 615. As the court of appeals correctly observed, the cases on which the trial court relied "found that 'reasonable suspicion' for a probation officer's warrantless search of a probationer's residence satisfied the Fourth Amendment, but did not hold that reasonable suspicion was constitutionally mandated." *Id.* at 197 ¶ 11, 358 P.3d at 618 (citing cases). Instead, as noted above (*supra*, ¶ 16), the Supreme Court has not required reasonable suspicion as a threshold standard for warrantless searches of probationers' residences, and for several reasons we are not inclined to do so.

**¶19**         First, *Samson* reiterated that "[t]he touchstone [or "object"] of the Fourth Amendment is reasonableness, not individualized suspicion," and that "the Fourth Amendment imposes no irreducible requirement of such suspicion." 547 U.S. at 855 n.4 (citation and internal quotation marks omitted). Although *Samson* did not equate parolees with probationers, noting that the former "have fewer expectations of privacy" than the latter, *id.* at 850, the Court did not suggest that the difference was so significant as to require a showing of reasonable suspicion to conduct a warrantless probationary search, particularly when the applicable probation conditions specifically and expressly authorize such searches. And, importantly, the state's "substantial" interests that weighed heavily in the Court's balancing of interests in *Samson* — "recidivism, public safety, and reintegration of parolees into productive society" — exist here as well. *Id.* at 853, 855 n.4.

**¶20** Second, *Samson* observed that "[i]mposing a reasonable suspicion requirement . . . would give parolees greater opportunity to anticipate searches and conceal criminality." *Id.* at 854. That same concern applies to probationers, as *Samson*, *Knights*, and *Griffin* recognized. *Id.* (citing *Knights*, 534 U.S. at 120; *Griffin*, 483 U.S. at 879). "In some cases—especially those involving drugs or illegal weapons—the probation agency must be able to act based upon a lesser degree of certainty than the Fourth Amendment would otherwise require in order to intervene before a probationer does damage to himself or society." *Griffin*, 483 U.S. at 879. Because "the similarities between parole and probation . . . are far greater than the differences," we conclude that reasonable suspicion is not necessarily required for a probationary search. *Cf. State v. Vanderkolk*, 32 N.E.3d 775, 779-80 (Ind. 2015) (holding that probationers who have been clearly informed that their probation conditions unambiguously authorize warrantless and suspicionless searches are subject to warrantless searches without reasonable suspicion).

**¶21** Third, contrary to Adair's argument, probationary searches conducted pursuant to clear, specific probation conditions are materially different from other types of searches that require reasonable suspicion. *See, e.g., O'Connor v. Ortega*, 480 U.S. 709, 722-26 (1987) (weighing hospital's interests against a doctor's privacy interests and concluding that search would be proper if supported by reasonable grounds for suspecting search would uncover evidence of doctor's misconduct); *New Jersey v. T.L.O.*, 469 U.S. 325, 337-42 (1985) (weighing government's interests against school student's privacy interests and finding search of student's purse reasonable only if supported by reasonable grounds to believe search would reveal evidence that student violated the law or school rules); *United States v. Brignoni-Ponce*, 422 U.S. 873, 878-82 (1975) (balancing government's interest against motorist's to find that roving immigration stops of vehicles must be supported by reasonable suspicion); *Terry v. Ohio*, 392 U.S. 1, 19, 30 (1968) (requiring reasonable suspicion before conducting investigatory stop and frisk of pedestrian on public property). The status and privacy interests of doctors, students, motorists, and pedestrians are not analogous to those of convicted felons on probation. The respective interests of the government and the persons subjected to searches in non-probation cases are not fairly comparable to the parties' respective interests here.

**¶22** Accordingly, we reject Adair's assertion that the Fourth Amendment categorically requires reasonable suspicion for all warrantless

searches of probationers' residences. A search of a convicted felon/probationer's home, conducted by probation officers pursuant to valid probation conditions, is categorically different from police officers' investigatory stops of vehicles or pedestrians. *Cf. Evans*, 237 Ariz. at 235 ¶ 17, 349 P.3d at 209 (holding that "reasonable suspicion under the Fourth Amendment does not require officers to testify about how their observations reduce or eliminate the possibility that innocent travelers will be subject to seizures or trial courts to make specific findings on that issue"); *Serna*, 235 Ariz. at 275 ¶ 21, 276 ¶ 28, 331 P.3d at 410, 411 (holding that, absent consent, a frisk of a suspect's person is permissible only if the officer "reasonably suspect[s] both that criminal activity is afoot and that the suspect is armed and dangerous").

¶23 Balancing Adair's "significantly diminished privacy interests," *Knights*, 534 U.S. at 121, against the state's "substantial" interests identified in *Samson*, 547 U.S. at 853, *Knights*, 534 U.S. at 120-21, and *Griffin*, 483 U.S. at 875-80, we hold that the probation officers' warrantless search of Adair's residence pursuant to the probation conditions complied with the Fourth Amendment if it was reasonable under the totality of the circumstances. *Cf. United States v. King*, 736 F.3d 805, 806 n.1, 810 (9th Cir. 2013) (rejecting argument that reasonable suspicion was required to authorize warrantless probationary search, and holding that "a suspicionless search [that is, "a search for which the police have less than reasonable suspicion"] conducted pursuant to a suspicionless search-condition of a violent felon's probation agreement does not violate the Fourth Amendment").

¶24 Adair's related argument based on article 2, section 8 of the Arizona Constitution does not change the result. Under that "right to privacy" clause, "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." Ariz. Const. art. 2, § 8; *cf. State v. Ault*, 150 Ariz. 459, 463, 724 P.2d 545, 549 (1986) (under Arizona law, "officers may not make a warrantless entry into a home in the absence of exigent circumstances or other necessity"); *State v. Bolt*, 142 Ariz. 260, 265, 689 P.2d 519, 524 (1984) (absent any showing of exigent circumstances or other necessity, officers violated article 2, § 8 by entering defendant's residence without a warrant, inspecting and "securing" the premises, and detaining all occupants until a warrant could be obtained). Although that provision is different and arguably broader than the Fourth Amendment, particularly as it pertains to a person's "private affairs" and "home," its

proscription applies to intrusions undertaken "without authority of law." A search of a probationer's residence pursuant to a valid probation condition is not "without authority of law" and thus does not violate Arizona's constitutional privacy clause, as long as the search is reasonable under the totality of circumstances. We next turn to that issue.

## V.

¶25 The court of appeals identified several, non-exhaustive factors it deemed relevant to the reasonableness inquiry: "[t]he target of the search must be a known probationer subject to a valid, enforceable probation condition allowing a warrantless search"; "[t]he search must be conducted by a probation officer in a proper manner and for the proper purpose of determining whether the probationer was complying with probation obligations"; and "the search must not be arbitrary, capricious or harassing." *Adair*, 238 Ariz. at 199 ¶ 21, 358 P.3d at 620. We agree with those factors but also find others that bear on whether the probationary search is reasonable, including the nature and severity of the probationer's prior conviction(s) for which he is on probation; the content and scope of the probation conditions; the nature and severity of the suspected criminal offenses or probation violations giving rise to the search; whether the suspected crimes or violations are the same as or similar to the crimes of which the probationer was previously convicted; and the nature, source, and plausibility of any extraneous information supporting the search.

¶26 Although we agree with the court of appeals that the reasonableness of the search depends on the totality of the circumstances, and thus the trial court applied the wrong legal standard, we find no need to remand for the trial court to revisit Adair's motion to suppress. The record, even when viewed in a light most favorable to upholding the ruling below, establishes that the search was reasonable. *See Peters*, 189 Ariz. at 220, 941 P.2d at 232 (vacating trial court's suppression order, which was based on an incorrect legal standard, and remanding for further proceedings not relating to the defendant's motion to suppress).

¶27 The trial court's ruling rested on an error of law regarding the applicable legal standard, not on determining any witness credibility issues or resolving any conflict in the evidence. Rather, incorrectly applying a reasonable-suspicion standard, the trial court granted the motion to suppress because the citizen informant's tip "supplied sparse information

10

without sufficient corroboration by the police or probation department"; the informant "appear[ed] to have a personal interest in what occurs as demonstrated by the informant's constant calling to the police to learn what has happened and when will it happen"; the informant supplied no information that was not "available from the public record" and related nothing that "could predict future behavior indicating criminal activity" by Adair; and limited, periodic police surveillance of Adair's residence did not reveal anything.

¶28        Viewed in the totality of the circumstances, none of the trial court's observations negates the reasonableness of the probationary search. The three pertinent factors that the court of appeals identified indisputably support the State: Adair was "a known probationer subject to a valid, enforceable probation condition allowing a warrantless search"; probation officers conducted the search in a proper manner and for a proper purpose; and the search was not arbitrary, capricious, or harassing. *Adair*, 238 Ariz. at 199 ¶ 21, 358 P.3d at 620.

¶29        Other factors also support a conclusion that the search here was reasonable. The two prior felony convictions for which Adair was placed on supervised probation stemmed from his possession of crack cocaine for sale, crimes that were similar if not identical to the suspected offenses that led to the probationary search. The informant suggested that Adair was continuing to commit narcotics offenses with his child present, as Adair had done when previously selling drugs to an undercover officer. In addition, the informant was not anonymous but rather provided the police with his name and other identifying information and maintained periodic contact with the police. A probationary search based on specific probation conditions and incriminating information from a known source is quite different from stopping a vehicle based solely on an uncorroborated "anonymous tip contain[ing] only neutral, non-predictive information about the defendant and his activities." *State v. Altieri*, 191 Ariz. 1, 4 ¶ 14, 951 P.2d 866, 869 (1997) (holding that officers lacked reasonable suspicion to support vehicle stop absent showing that anonymous tipster was reliable and predicted future events that police corroborated).

¶30        The trial court observed that the informant provided very limited, uncorroborated information.  But those observations, though pertinent to situations involving anonymous tips in which reasonable suspicion or probable cause is required for a stop or search, neither

diminish the significance of the information that was conveyed nor preclude a finding of reasonableness in this context. *Cf. Florida v. J.L.*, 529 U.S. 266, 273-74 (2000) (holding that anonymous tip lacking indicia of reliability did not justify stop and frisk for firearm, but suggesting that showing of informant reliability is not necessarily required in other circumstances in which people have a diminished reasonable expectation of privacy); *Alabama v. White*, 496 U.S. 325, 328-29, 332 (1990) (holding that an "anonymous tip, as corroborated, exhibited sufficient indicia of reliability to justify the investigatory stop of [defendant's] car," and noting that "lesser showing" of "an informant's 'veracity,' 'reliability,' and 'basis of knowledge'" is required to meet reasonable-suspicion rather than probable-cause standard) (quoting *Illinois v. Gates*, 462 U.S. 213, 230 (1983)).

¶31        As the trial court stated, the information received from the informant "never changed" but instead "remained the same." And, contrary to the court's remark, information that "Adair was still selling crack cocaine out of [his] home" was not "available from the public record." Nor does a finding that this probationary search was reasonable hinge on the informant's "predict[ing] future behavior," a showing generally required for police searches or seizures based on anonymous tips. *Cf. Altieri*, 191 Ariz. at 3-4 ¶¶ 9-12, 951 P.2d at 868-69 (citing *White*, 496 U.S. at 332) (anonymous tipster's prediction of defendant's future activity is generally required to show tipster's reliability).

¶32        Finally, and importantly, the court-imposed probation conditions to which Adair agreed specifically required him to submit to a warrantless, probationary "search and seizure of person and property," and to provide the probation department "safe, unrestricted access to" his residence. The search here was conducted in accordance with those conditions, a "salient circumstance" that "significantly diminished [Adair's] reasonable expectation of privacy." *Knights*, 534 U.S. at 118, 120. The search also was directly related to the further conditions under which Adair agreed to obey all laws and not possess illegal drugs. Considering the totality of the circumstances, we hold that the search conducted here was reasonable and thus constitutional.

## VI.

¶33        The court of appeals' opinion is vacated, the superior court's order granting Adair's motion to suppress is reversed, and the case is

remanded to the superior court for further proceedings.