NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

TYRONE LEE TUCKER, *Appellant.*

No. 1 CA-CR 17-0487
FILED 4-26-2018

Appeal from the Superior Court in Mohave County
No. S8015CR201501556
The Honorable Billy K. Sipe, Judge

**AFFIRMED**

COUNSEL

Janelle A. McEachern, Attorney at Law, Chandler
By Janelle A. McEachern
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Jason Lewis
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Judge James P. Beene delivered the decision of the Court, in which Presiding Judge Jon W. Thompson and Judge Peter B. Swann joined.

---

B E E N E, Judge:

¶1          Tyron Lee Tucker ("Tucker") appeals his convictions and resulting sentences.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2          After midnight on December 16, 2015, Trooper Todd Dickinson conducted a traffic stop on Interstate 40 in Kingman.  The driver, Shuron Jones ("Jones"), and the passenger, Tucker, were in a rental car and produced California identification.  Based on Jones's behavior and the discrepancies in statements given by Jones and Tucker, Dickinson detained the pair to conduct a search of the car.  A bag containing two pounds of methamphetamine was found in the car, and Tucker's fingerprints were found on the exterior and interior bags.

¶3          Tucker was charged with possession of methamphetamine for sale (count 1), transportation of methamphetamine for sale (count 2), and possession of drug paraphernalia (count 3).  Before trial, Tucker moved to suppress the evidence found in the car arguing (1) no reasonable suspicion supported the initial traffic stop, (2) no reasonable suspicion supported extending the traffic stop to conduct the K9 search, (3) no probable cause existed to conduct the K9 search, and (4) the K9 search was unreliable.  After full briefing and oral argument, the superior court denied Tucker's motion.  Tucker then unsuccessfully moved to sever his trial from that of his co-defendant, Jones.

¶4          Following a three-day trial, the jury convicted Tucker on all counts, and the superior court sentenced him to 7.5 years in prison for counts 1 and 2, and six months for count 3, to be served concurrently.  This timely appeal followed.  We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") §§ 12-120.21(A)(1), 13-4031, and -4033(A).

## DISCUSSION

### I. Motion to Suppress

¶5 Tucker argues that the superior court erred in denying his motion to suppress because law enforcement lacked reasonable suspicion to extend the traffic stop beyond its original purpose.[1] Thus, he argues, the drugs and drug paraphernalia discovered during the search of the car must be suppressed. We disagree.

¶6 Pursuant to the Fourth Amendment of the United States Constitution and Article 2, Section 8, of the Arizona Constitution, persons are protected from unreasonable searches and seizures. *State v. Allen*, 216 Ariz. 320, 323, ¶ 9 (App. 2007). When a violation of the Fourth Amendment or its state counterpart is determined to have occurred, the exclusionary rule generally requires the suppression at trial of any evidence directly or indirectly gained as a result of the violation. *State v. Schinzel*, 202 Ariz. 375, 382, ¶ 28 (App. 2002).

¶7 "We review a trial court's ruling on a motion to suppress for abuse of discretion, considering only the evidence presented at the suppression hearing and viewing the facts in a light most favorable to sustaining the trial court's ruling." *State v. Adair*, 241 Ariz. 58, 60, ¶ 9 (2016). Although we generally defer to the court's factual findings if the evidence reasonably supports them, we review the court's ultimate legal determination that the search complied with the Fourth Amendment *de novo*. *State v. Evans*, 237 Ariz. 231, 233, ¶ 6 (2015); *State v. Davolt*, 207 Ariz. 191, 202, ¶ 21 (2004). "We do not reweigh the evidence on appeal and will overturn the trial court's findings only if no substantial evidence supports them." *State v. Rodriguez*, 205 Ariz. 392, 397, ¶ 18 (App. 2003).

¶8 "[P]olice can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *Evans*, 237 Ariz. at 234, ¶ 7 (citation omitted). "In determining

---

[1] Tucker does not challenge the constitutionality of the initial traffic stop or the K9 search. Because Tucker has failed to raise these arguments on appeal, we deem them waived and do not address them. *See State v. Carver*, 160 Ariz. 167, 175 (1989) ("In Arizona, opening briefs must present significant arguments, supported by authority, setting forth an appellant's position on the issues raised. Failure to argue a claim usually constitutes abandonment and waiver of that claim.").

whether reasonable suspicion exists, officers and courts reviewing their actions take into account the totality of the circumstances—the whole picture of what occurred at the scene"—and "[f]rom that whole picture the officers must derive a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Id*. at ¶ 8 (internal citations and quotations omitted). "Although a mere unparticularized suspicion or hunch does not establish reasonable suspicion," courts must give consideration "to the specific reasonable inferences [that an officer] is entitled to draw from the facts in light of his experience." *Id*. (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)) (internal quotations omitted); *see State v. Teagle*, 217 Ariz. 17, 24, ¶ 26 (App. 2007) ("In reviewing the totality of the circumstances, we accord deference to a trained law enforcement officer's ability to distinguish between innocent and suspicious actions."); *see also United States v. Arvizu*, 534 U.S. 266, 273-74 (2002) (reviewing reasonable-suspicion determinations in view of the totality of the evidence, giving due weight to officers' experience and specialized training).

¶9            A traffic stop becomes an unlawful seizure "if it is prolonged beyond the time reasonably required to complete th[e] mission of issuing a ticket for the violation." *Rodriguez v. United States*, 135 S. Ct. 1609, 1612 (2015) (internal quotation and citation omitted). Police "may not extend an otherwise-completed traffic stop, absent reasonable suspicion, in order to conduct a dog sniff." *State v. Driscoll*, 238 Ariz. 432, 434, ¶ 8 (App. 2015) (citing *Rodriguez*, 135 S. Ct. at 1614) (internal quotation omitted).

¶10           At the suppression hearing, Trooper Dickinson testified that he had been a law enforcement officer for nine years. In that time, he received advanced training in criminal interdiction, DUI, and collision investigations; investigated numerous drug cases; and conducted thousands of traffic stops.

¶11           Dickinson testified that on December 16, 2015, at approximately 12:40 a.m., he was on routine patrol on Interstate 40 at a stationary post. He observed a car travelling at 70 mph in a 75-mph zone. Once the car passed Dickinson, it slowed abruptly and pulled into the right lane, now driving at 50 mph, 25 mph under the speed limit. Dickinson followed the car and observed it move from the right lane to the left lane, cross the left lane fog line, drive off the left shoulder one or two times, then move back in the right lane in front of Dickinson. Traffic at that time of night was moderate so the car did not have to make those moves to drive around traffic. Dickinson testified that based on his training, this type of driving indicated the driver may be impaired.

¶12        Dickinson conducted a traffic stop, approached the car, and asked the driver to come back to his patrol car. Jones, the driver, produced a California driver's license and a rental car agreement showing the car was rented by Clara Tucker, Tucker's mother. When asked why he was not able to maintain his lane, Jones replied that he was not used to driving long distances and was driving from California to Farmington, New Mexico. Jones said he and his passenger were going to stay in New Mexico for five days for a cousin's birthday party. However, the rental car agreement Jones produced indicated the car was rented for three days only, not five. When Dickinson asked his cousin's name, Jones hesitated and did not provide a name or any other details. Dickinson testified that Jones seemed overly nervous, very unsure about the facts surrounding his trip and that he suspected that Jones's statements were made-up. Dickinson stated that typically a person pulled over by the police would be nervous at first, but it would subside. Jones's nervousness, however, did not subside. Dickinson asked Jones if he had a family and, if so, why he was travelling from California to New Mexico so close to the holidays. Jones replied that he had a family and the trip was "spur-of-the-moment."

¶13        Tucker, who was in the passenger seat, yelled out through the window, "Is this going to take too long?" Dickinson approached Tucker, told him it would not be much longer, and asked him about their travel plans. As with Jones, Tucker said they were going to Farmington, New Mexico. But, Tucker said they would be in New Mexico for eight days, not five days as Jones said, and Tucker said they were visiting his cousin, William, not Jones's cousin. Upon questioning, Tucker advised that he and Jones were both unemployed at the time.

¶14        At that point, Dickinson walked back to Jones and issued him a warning for unsafe lane usage and failure to signal lane changes. Because Jones appeared unusually nervous, Dickinson asked to take Jones's pulse and he agreed. Jones's pulse rate was 160 beats per minute. Pursuant to his training and experience, Dickinson testified that a normal resting pulse rate is 60-90 beats per minute, where someone using methamphetamine has a pulse rate of 120-160 beats per minute. Jones explained that his pulse rate was so high because he consumed an energy drink earlier. Dickinson asked Jones if he had anything illegal in the car. Jones replied that he did not know because it was a rental car and other people drove it. Dickinson advised Jones that Arizona had a problem with drug trafficking and money laundering. To that statement, Dickinson testified, Jones became aggravated, threw his hand up and down, as if throwing a tantrum, and said "I don't do drugs. Do I look like someone that does drugs? . . . Take my blood and test it." At this point, Dickinson believed Jones and Tucker

were involved in criminal activity and, based on Jones's response to Dickinson's comment, the car would contain money or drugs. Jones refused to consent to a search of the car, stating, "You don't have probable cause. I don't do drugs. No." Dickinson called for another officer to assist. Dickinson testified that at that point, the traffic stop lasted approximately 10-15 minutes.

¶15 Dickinson went back to the passenger side and made contact with Tucker again. Dickinson told Tucker that Arizona had a problem with drug trafficking and asked if he could search the car. Tucker yelled back to Jones through the window, "You're not gonna let him search the vehicle, are you?" With no consent to search the car, Dickinson called for a K9 unit, which arrived approximately 15-25 minutes later. After the dog alerted on the car, Dickinson conducted a search and found a football-sized trash bag in the trunk by the spare tire. The substance inside was later identified as methamphetamine.

¶16 Dickinson testified that he stopped Jones and Tucker at 12:40 a.m., called for the K9 unit approximately 20 minutes later, and was notified the K9 unit was in route eight minutes after that. The K9 unit arrived approximately 15-25 minutes after Jones refused to consent to the search. Upon discovering the drugs in the car, Tucker and Jones were arrested at 1:38 a.m. By Dickinson's calculations, from the time of the initial stop to arrest, Jones had been detained for approximately one hour.

¶17 In denying Tucker's motion to suppress, the superior court found that, based on Dickinson's extensive training and experience, evidence of (1) the inconsistencies in the statements provided by Tucker and Jones as to their travel plans in New Mexico—Jones said they were staying for five days, Tucker said eight days, but the rental car agreement was for three days only; and (2) Jones's extreme nervousness, substantially more than the average motorist, coupled with a pulse rate of 160 beats per minute provided Dickinson with reasonable suspicion to investigate further and extend the traffic stop.

¶18 Given the totality of the circumstances considering Dickinson's training and expertise, reasonable suspicion existed to believe that Tucker and Jones may be involved in criminal activity. Thus, prolonging the otherwise-completed traffic stop for unsafe lane usage and failure to signal lane changes to investigate and conduct a K9 search for possible drugs was not an unlawful seizure. *See Rodriguez*, 135 S. Ct. at 1614; *Driscoll*, 238 Ariz. at 434, ¶ 8. Because substantial evidence supports the

superior court's findings, it did not abuse its discretion in denying Tucker's motion to suppress.[2]

## II.    Motion to Sever

¶19        Tucker argues that the superior court erred in denying his motion to sever his trial from Jones's trial because each defendant's case prejudiced the other's defense.

¶20        "Two or more defendants may be joined if each defendant is charged with each alleged offense, or if the alleged offenses are part of an alleged common conspiracy, scheme, or plan, or are otherwise so closely connected that it would be difficult to separate proof of one from proof of the others." Ariz. R. Crim. P. 13.3(b). However, a defendant's trial must be severed from his co-defendant's "if necessary to promote a fair determination of any defendant's guilt or innocence of any offense[.]" Ariz. R. Crim. P. 13.4(a).

¶21        We review the superior court's denial of a motion to sever for an abuse of discretion. *State v. Blackman*, 201 Ariz. 527, 537, ¶ 39 (App. 2002). To establish an abuse of discretion, a defendant must show that he would be prejudiced absent severance — a "compelling prejudice against which the trial court was unable to protect." *State v. Murray*, 184 Ariz. 9, 25 (1995) (citations and internal quotations omitted). Prejudice occurs when:

> (1) evidence admitted against one defendant is facially incriminating to the other defendant, (2) evidence admitted against one defendant has a harmful rub-off effect on the

---

[2]        We previously examined a similar situation in *State v. Sweeney*, 224 Ariz. 107 (App. 2010), in which we arrived at a different conclusion. There, Sweeney was stopped for a traffic violation by a K9 unit officer travelling with his drug interdiction dog. *Id*. at 109, ¶ 1-2. During the stop, the officer became suspicious that Sweeney was involved in criminal activity based on a number of observations. *Id*. at 110, ¶ 9. Nevertheless, the officer issued Sweeney a citation, told him he was free to go, and "wished him a safe trip." *Id*. at 109, ¶ 5. *Sweeney*, however, is distinguishable from the instant case. Here, several intervening events following completion of the initial traffic stop gave rise to reasonable suspicion supporting the continued detention of Jones and Tucker to investigate further — that being Jones's unusually-elevated nervousness, high pulse rate, and extreme aggravation and response to Dickinson's statement regarding Arizona's problem with drug trafficking.

other defendant, (3) there is significant disparity in the amount of evidence introduced against the defendants, or (4) co-defendants present antagonistic, mutually exclusive defenses or a defense that is harmful to the co-defendant.

*Id*.

**¶22** Tucker does not argue that he and Jones presented antagonistic defenses. In fact, Tucker admits that "neither defendant was attempting to say that the drugs belonged to the other. Both were denying that they knew or placed the drugs in the car in the first place." Nor does Tucker contend evidence admitted against either defendant was facially incriminating to the other or that there was a significant disparity in the amount of evidence introduced. Tucker claims only that his and Jones's defenses were "polluted" because Dickinson cited Jones's behavior as one of the reasons for detaining them and searching the vehicle and Tucker's prints were found on the drug packaging. In essence, Tucker asserts those two pieces of evidence had a harmful rub-off effect to which the superior court was unable to protect. We disagree.

**¶23** "Rub-off occurs when the jury's unfavorable impression of the defendant against whom the evidence is properly admitted influence[s] the way the jurors view the other defendant." *State v. Tucker*, 231 Ariz. 125, 142, ¶ 42 (App. 2012) (citations and internal quotations omitted). "[A] court is not required to sever a defendant's trial based on rub-off if under all circumstances the jurors are capable of following the court's instructions, keeping the evidence relevant to each defendant separate, and rendering a fair and impartial verdict as to each." *Id*. "[M]ere introduction of evidence concerning one defendant's conduct that does not involve the other defendant generally does not constitute sufficient grounds for severance." *State v. Van Winkle*, 186 Ariz. 336, 339 (1996).

**¶24** Tucker has failed to show prejudicial rub-off effect warranting severance. During the presentation of evidence and argument, the prosecutor and State's witnesses clarified which evidence involved Tucker and how that evidence proved the charges against him. At the close of the State's case-in-chief, Tucker renewed his motion to sever. The superior court denied his motion, finding that there was "simply no factual or legal basis whatsoever to sever these defendants for trial. And I think that's really been reaffirmed based on what was presented and not presented during the trial."

¶25 Tucker did not present evidence in his defense, but Jones testified at trial on his own behalf. His testimony reveals nothing incriminating against Tucker. Jones merely explained his behavior as observed by Dickinson and emphasized that he did not inspect the rental car before driving it and did not know the black trash bag was in the trunk or that it contained drugs. He did not, at any time, suggest the drugs belonged to Tucker. Counsel for both Jones and Tucker cross-examined each witness and presented argument on behalf of their respective clients. Closing argument for each defendant showed their defenses were consistent and complimentary to each other.

¶26 The superior court instructed the jury that it "must consider the charged offense against each defendant separately . . . [and] determine the verdict as to the crime charged based on that defendant's own conduct and from the evidence which applies to that defendant as if that defendant were being tried alone." This proper jury instruction "effectively cured any potential prejudice due to rub-off." *Tucker*, 231 Ariz. at 142, ¶ 43; *see also Murray*, 184 Ariz. at 25 (A properly instructed jury "is presumed to have considered the evidence against each defendant separately."); *State v. Prince*, 204 Ariz. 156, 158, ¶ 9 (2003) ("We . . . presume that jurors follow instructions.").

¶27 Tucker has failed to show, nor can we find, how evidence of Jones's driving and behavior or evidence of Tucker's fingerprints on the drug package prejudicially influenced the way jurors viewed his defense. Therefore, the superior court did not abuse its discretion in denying Tucker's motion to sever.

## CONCLUSION

¶28 For the foregoing reasons, we affirm Tucker's convictions and resulting sentences.



AMY M. WOOD • Clerk of the Court
FILED: AA

9