IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

---

**STATE OF ARIZONA,**
*Appellant*,

*v.*

**BRYAN MITCHELL LIETZAU,**
*Appellee.*

---

No. CR-19-0132-PR
Filed May 22, 2020

---

Appeal from the Superior Court in Pima County
CR20162952-001
The Honorable Howard Fell, Judge Pro Tempore
**REVERSED AND REMANDED**

---

Opinion of the Court of Appeals, Division Two
246 Ariz. 380 (App. 2019)
Filed March 25, 2019
**VACATED**

---

COUNSEL:

Barbara LaWall, Pima County Attorney, Jacob R. Lines (argued), Deputy
County Attorney, Tucson, Attorneys for State of Arizona

Joel Feinman, Pima County Public Defender, David J. Euchner (argued),
Abigail Jensen, Deputy Public Defenders, Tucson, Attorneys for Bryan
Mitchell Lietzau

Mikel Steinfeld (argued), Phoenix, Attorney for Amicus Curiae Arizona
Attorneys for Criminal Justice

_____

VICE CHIEF JUSTICE TIMMER authored the Opinion of the Court, in which CHIEF JUSTICE BRUTINEL, and JUSTICES BOLICK, GOULD, LOPEZ, BEENE, and MONTGOMERY joined.

_____

VICE CHIEF JUSTICE TIMMER, Opinion of the Court:

¶1            Cell phones provide access to an immense array of private information, much of which is stored in the Cloud or on sites controlled by third parties.  As such, the United States Supreme Court concluded in *Riley v. California* that people have uniquely broad expectations of privacy in cell phones and, therefore, a warrant is generally required to search them.  573 U.S. 373, 393–94, 401 (2014).  In the wake of *Riley*, we are asked to decide whether Arizona's standard conditions of probation, which permit warrantless searches of a probationer's "property," apply to cell phones. We hold they do.  We further hold that the search here was reasonable under the totality of the circumstances and therefore compliant with the Fourth Amendment.

## BACKGROUND

¶2            In August 2014, the superior court entered judgment against Bryan Lietzau for the crime of aggravated harassment, a domestic violence offense and a class 6 undesignated felony.  The court suspended imposition of a prison sentence on Lietzau and placed him on supervised probation for eighteen months.  In return, Lietzau agreed to comply with uniform conditions of supervised probation and separate domestic violence probation terms, both of which outlined requirements for "leading a law-abiding lifestyle" and cooperating with the adult probation department ("APD"), among other terms and conditions.  Pertinent here, Lietzau agreed to "submit to search and seizure of person and property by the APD without a search warrant" ("Condition 4").[1]

¶3            A few months later, G.E. reported to the APD her suspicion that S.E., her thirteen-year-old daughter, and Lietzau were engaging in an

_____

[1] Similarly, the domestic violence probation terms required Lietzau to "[s]ubmit to search and seizure of person and property by any probation officer."

"inappropriate relationship." APD surveillance officer Casey Camacho arrested Lietzau weeks later for violating several conditions of probation unrelated to S.E.: (1) failing to provide APD safe, unrestricted access to his residence; (2) failing to participate and cooperate in counseling or assistance programs as directed; (3) failing to take a drug test as directed; and (4) failing to perform community restitution. En route to jail, Camacho looked through text messages on Lietzau's cell phone and discovered numerous incriminating messages and photos between Lietzau and S.E. Camacho informed police, who then obtained a search warrant to search the cell phone and discovered the messages. The State subsequently indicted Lietzau on six counts of sexual conduct with a minor.

¶4        Lietzau moved to suppress all evidence gathered as a result of Camacho's cell phone search, arguing the search violated his state and federal constitutional rights to be free from unreasonable searches and seizures. The State responded that Condition 4 justified Camacho's warrantless search because a cell phone is "property." Both parties provided evidence supporting their positions, including a transcription of defense counsel's interview of Camacho. After conducting a non-evidentiary hearing, the court granted the motion.

¶5        The court first reviewed the holdings in *Riley* and *United States v. Lara*, 815 F.3d 605 (9th Cir. 2016), both of which addressed the unique privacy implications attendant to cell phone searches. The court then applied factors listed in *State v. Adair*, 241 Ariz. 58, 64 ¶¶ 23–25 (2016), to determine whether the search was reasonable under the totality of the circumstances, and thus constitutionally permissible. The court ultimately found that the search was unreasonable because Condition 4 was not sufficiently broad to permit the search, Camacho had no proper purpose in searching the phone, the search was arbitrary, and the alleged probation violations involved only "administrative kinds of things."

¶6        The court of appeals reversed. *State v. Lietzau*, 246 Ariz. 380, 381 ¶ 1 (App. 2019). After applying the *Adair* factors, it found that the search was reasonable. *Id.* at 384 ¶ 11. Unlike the superior court, the court of appeals relied heavily on the fact that at the time of Lietzau's arrest, the APD and Camacho had been told about the suspected, inappropriate relationship between Lietzau and S.E. *Id.* This allegation, according to the court, gave the APD "a well-founded, non-arbitrary reason to suspect Lietzau of committing another felony while on probation." *Id.* ¶¶ 11–12. The court also found that the term "property" in Condition 4 included a cell

phone, and that cell phones are "'ubiquitous' repositories of communications and photos" that may reveal an inappropriate relationship with a minor. *Id.* at 385–86 ¶¶ 14–15. Under the totality of these circumstances, the court concluded that Camacho's search of the cell phone was reasonable, and that the trial court erred by granting the motion to suppress. *Id.* at 386 ¶ 19.

¶7        We granted Lietzau's petition for review to resolve issues of statewide importance that are likely to recur.

## DISCUSSION

¶8        We review the trial court's suppression order for an abuse of discretion. *See State v. Peoples*, 240 Ariz. 244, 247 ¶ 7 (2016). In doing so, we consider only the evidence presented at the suppression hearing and view that evidence in a light most favorable to upholding the court's ruling. *Id.* An error of law constitutes an abuse of discretion. *Id.*

### I.  Cell phones as "property" under Condition 4

¶9        Lietzau argues the court of appeals erred by finding that "property" in Condition 4 includes cell phones. He does not dispute that a cell phone constitutes "property" under the plain meaning of the word. *See Property*, Black's Law Dictionary (11th ed. 2019) (defining "property" as "the rights in a valued resource such as land, chattel, or an intangible"). Rather, he relies on the Supreme Court's decision in *Riley* to argue that the term "property" in Condition 4 necessarily excludes cell phones.

¶10        The Court in *Riley* recognized that cell phones are "minicomputers" that hold "a digital record of nearly every aspect of [people's] lives—from the mundane to the intimate" and are thus unlike the types of property carried in one place by people living before the digital age. *Riley*, 573 U.S. at 393–95. As such, the Court concluded that a warrant is generally required to search a cell phone, and such devices are not subject to the search incident to arrest exception to the Fourth Amendment's warrant requirement. *Id.* at 401–03; *see also Peoples*, 240 Ariz. at 248–49 ¶¶ 11–16 (discussing *Riley*).

¶11        Lietzau argues that after *Riley*, just as a warrant is generally required to search an arrestee's cell phone, a warrant is generally required to search a probationer's cell phone. Because the trial court was

presumptively aware of *Riley* before placing Lietzau on probation, and the court could not impose an illegal condition, he asserts that Condition 4 necessarily excludes cell phones from its reach. *Cf. Polk v. Hancock*, 237 Ariz. 125, 129 ¶ 10 (2015) (concluding the trial court erred by imposing illegal probation term despite the defendant's agreement because "parties cannot confer authority on the court that the law proscribes").

¶12 We disagree that *Riley* prohibits probation conditions authorizing warrantless searches of cell phones. Simply put, the Court did not address that issue. Conversely, it has recognized that supervising probationers "permit[s] a degree of impingement upon privacy that would not be constitutional if applied to the public at large" to "assure that the probation serves as a period of genuine rehabilitation and that the community is not harmed by the probationer's being at large." *Griffin v. Wisconsin*, 483 U.S. 868, 875 (1987). To that end, it has found that "a court granting probation may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens," including a condition requiring the probationer to "[s]ubmit his . . . person, property, place of residence, vehicle [and] personal effects" to a warrantless search. *United States v. Knights*, 534 U.S. 112, 114, 119 (2001); *see also State v. Montgomery*, 115 Ariz. 583, 584 (1977) ("[A] probationer who has been granted the privilege of probation on condition that he submit at any time to a warrantless search may have no reasonable expectation of traditional Fourth Amendment protection." (quoting *People v. Mason*, 488 P.2d 630, 633 (Cal. 1971)). Nothing in *Riley* suggests that the substantial privacy concerns attendant to warrantless cell phone searches of arrestees, who have not been convicted of a crime, foreclose warrantless searches of probationers' cell phones pursuant to a probation condition, assuming the search is otherwise reasonable. *See Griffin*, 483 U.S. at 873, 876 (requiring a warrantless search of a probationer's home to be "reasonable" to comply with the Fourth Amendment).

¶13 *Lara*, relied on by the trial court, does not persuade us to exclude cell phones from the reach of Condition 4. Lara's probation conditions authorized warrantless, suspicionless searches of his "person and property, including any residence, premises, container or vehicle under [his] control." *Lara*, 815 F.3d at 607. Probation officers searched text messages on Lara's phone and found evidence ultimately leading to a criminal conviction. *Id.* at 608. The Ninth Circuit held that the district court erred by not suppressing that evidence because the cell phone search was unreasonable under the circumstances. *Id.* at 612, 614. Significantly, for our

purposes, the court concluded that the word "property" in Lara's probation conditions did not unambiguously include cell phone data. *Id.* at 611. It pointed out that although the examples given in the condition "refer to physical objects that can be possessed," cell phone data cannot be physically possessed and much information accessible through a phone, such as banking and medical records, are possessed by third parties and are thus not "under [Lara's] control" as provided in the condition. *Id.*

¶14        *Lara* is distinguishable and, to the extent it is not, we reject its reasoning. Condition 4 authorizes a warrantless search of Lietzau's "property" without qualifying examples, making it broader than the condition in *Lara*. Regardless, we disagree with *Lara* that the inability to physically possess digital data means it is not property when displayed on a cell phone. Whether we consider digital data to be merged with the cell phone displaying it, much like information written on paper, or treat it as intangible, digital data constitutes "property." *See Property*, Black's Law Dictionary, *supra* (including "chattel" and something "intangible" in the definition of "property").

¶15        In sum, the plain meaning of "property" in Condition 4 includes a cell phone. *Riley* does not vary that meaning. The trial court erred by concluding otherwise.

## II.    Reasonableness of the search under the Fourth Amendment

¶16        Lietzau argues that even if Condition 4 authorized a search of his cell phone, Camacho's search was unreasonable because it was suspicionless and unrelated to the reason for Lietzau's arrest or his probation conditions. More specifically, he asserts that the search had nothing to do with S.E., and the court of appeals "conjured its own factual findings" to justify the search on that basis. The State responds that the court of appeals correctly applied the *Adair* factors to conclude that the search was reasonable and thus compliant with the Fourth Amendment.

¶17        We have previously found that probation conditions like Condition 4 are "not an unreasonable or an unconstitutional limitation upon [a probationer's] right to be free from unreasonable searches and seizures." *Montgomery*, 115 Ariz. at 584. But we have never held that such conditions alone are sufficient to make any search of a probationer's person or property reasonable under the Fourth Amendment. *See Adair*, 241 Ariz.

at 61 ¶ 11 (declining to address the issue). Instead, we have concluded that this condition diminishes a probationer's reasonable expectation of privacy in his person and property. *See id.* ¶ 12; *Montgomery*, 115 Ariz. at 584; *see also Knights*, 534 U.S. at 119–20. We examine the particular circumstances of a case to determine whether that diminished expectation, in combination with other factors, renders a search reasonable under the Fourth Amendment. *See Adair*, 241 Ariz. at 62 ¶ 18.

¶18 The most recent case from this Court to address probationary searches is *Adair*. There, we considered whether reasonable suspicion was required to authorize the warrantless search of a probationer's home. *Id.* at 60 ¶ 9. After reviewing a trilogy of Supreme Court opinions and balancing a probationer's "significantly diminished privacy interests" against the state's "substantial" interests in preventing recidivism, protecting the public, and reintegrating probationers into society, we concluded that a warrantless probationary search complies with the Fourth Amendment if the search is reasonable under the totality of the circumstances. *Id.* at 62–64 ¶¶ 19–23.

¶19 The *Adair* Court identified a non-exhaustive list of factors relevant to the reasonableness inquiry: (1) whether the "target of the search [is] a known probationer subject to a valid, enforceable probation condition allowing a warrantless search"; (2) whether the search is "conducted by a probation officer in a proper manner and for the proper purpose of determining whether the probationer was complying with probation obligations"; (3) whether "the search [is] arbitrary, capricious or harassing"; (4) "the nature and severity of the probationer's prior conviction(s) for which he is on probation"; (5) "the content and scope of the probation conditions"; (6) "the nature and severity of the suspected criminal offenses or probation violations giving rise to the search"; (7) "whether the suspected crimes or violations are the same as or similar to the crimes of which the probationer was previously convicted"; and (8) "the nature, source, and plausibility of any extraneous information supporting the search." *Id.* ¶ 25 (citation omitted). Not all factors are relevant in every case, and they are somewhat overlapping.

¶20 Applying the *Adair* factors here and viewing the facts in a light most favorable to upholding the trial court's ruling, we conclude that Camacho's search of Lietzau's cell phone was reasonable under the totality of the circumstances.

¶21          Lietzau was on supervised probation and subject to Condition 4, which authorized a warrantless search of his "property," including his cell phone.  As such, Lietzau had a diminished expectation of privacy in his phone.  *See Knights*, 534 U.S. at 119–20; *Adair*, 241 Ariz. at 61 ¶ 12; *Montgomery*, 115 Ariz. at 584.  Lietzau's reasonable expectation of privacy in his cell phone log, e-mails, and text messages was particularly diminished because he could reasonably expect they would be searched to determine his compliance with probation conditions, including conditions forbidding contact with the victim and her family.  The search was conducted by a surveillance officer, and nothing suggests the search was conducted in an improper manner.

¶22          The trial court found, without explanation, that Camacho lacked a proper purpose for conducting the search and that the search was arbitrary.  During defense counsel's interview of Camacho, counsel never asked, and Camacho did not explain, the reason for the search.  Nevertheless, Lietzau argues the search was improper because Camacho indicated that he searches probationers' cell phones routinely, and he did not say he searched Lietzau's phone because of any suspected wrongdoing or probation violation.  To this end, Lietzau pieces together Camacho's assertions that he "go[es] through hundreds of phones a month," he "didn't know one way or the other" whether Lietzau and S.E. text-messaged each other, and he believed he did not need a warrant because Lietzau was on probation.

¶23          Lietzau's focus on Camacho's subjective purpose for searching the cell phone is misplaced.  The reasonableness of a search turns on objective criteria and not an officer's subjective mindset or motivations. *See Kentucky v. King*, 563 U.S. 452, 464 (2011) ("[W]e have never held, outside limited contexts such as an inventory search or administrative inspection . . . , that an officer's motive invalidates objectively justifiable behavior under the Fourth Amendment." (citation omitted) (internal quotation marks omitted)); *see also State v. Hausner*, 230 Ariz. 60, 73 ¶ 39 (2012) (to same effect).  An objective inquiry is consistent with other tests for reasonableness and promotes "evenhanded law enforcement."  *See King*, 563 U.S. at 464 (citing *Horton v. California*, 496 U.S. 128, 138 (1990)).  Thus, to determine whether Camacho searched the cell phone for the proper purpose of determining whether Lietzau was complying with his probation obligations, we examine whether the circumstances, viewed objectively, support such a finding.  *See Ashcroft v. al-Kidd*, 563 U.S. 731, 736 (2011) ("Fourth Amendment reasonableness is predominantly an objective

8

inquiry . . . [that asks] whether the circumstances, viewed objectively, justify [the challenged] action." (citations omitted) (quotation marks omitted)).

¶24    Camacho, as the assigned surveillance officer, properly monitored Lietzau's compliance with probation conditions to assist the APD's efforts to simultaneously rehabilitate Lietzau and protect the victim and society from future crimes. *Cf. Knights*, 534 U.S. at 119–21 (describing the goals for probation as rehabilitation, protecting society from future criminal violations, and integrating the probationer back into the community); *see also Montgomery*, 115 Ariz. at 584 (noting that probation conditions "aid in the rehabilitation process or prove a reasonable alternative to incarceration as punishment for the crime committed"); Ariz. R. Crim. P. 27.1(b) (stating a "court may impose conditions on a probationer that promote rehabilitation and protect any victim"). One probation condition required Lietzau to "maintain a crime-free lifestyle by obeying all laws, and not engaging or participating in any criminal activity." At the time of the search, the APD and Camacho had been informed by G.E. on more than one occasion that Lietzau, a twenty-two-year-old man, was suspected of engaging in an "inappropriate relationship" with S.E., a thirteen-year-old girl, which Camacho reasonably understood to mean a sexual relationship. If G.E.'s suspicions were correct, Lietzau was committing serious criminal offenses that not only violated his probation conditions but victimized S.E.

¶25    As the court of appeals observed, text-messaging about sexual relationships is commonly done among teens and young adults. *See Lietzau*, 246 Ariz. at 385 ¶ 14; *see also* Elizabeth M. Ryan, *Sexting: How the State Can Prevent a Moment of Indiscretion from Leading to a Lifetime of Unintended Consequences for Minors and Young Adults*, 96 Iowa L. Rev. 357, 360 (2010) (observing that sending "sexually suggestive text messages and images" via cell phone is a "social phenomenon among minors and young adults"). Determining whether Lietzau's text messages revealed a sexual relationship with S.E. directly related to his compliance with probation conditions, his rehabilitation, and the APD's efforts to protect the public from future crimes. Thus, Camacho had an objectively proper purpose for searching those messages, even if that was not his subjective motivation. *See Adair*, 241 Ariz. at 66 ¶ 32 (upholding probationary search that "directly related" to the requirement that the probationer obey all laws and not possess illegal drugs).

¶26        Even absent evidence that Lietzau and S.E. were engaging in a suspected sexual relationship, Camacho had an objectively proper purpose for searching the cell phone messages to ensure Lietzau's compliance with probation conditions.  Lietzau, a domestic violence offender, was prohibited from contacting the victim and her family as a condition of probation.  Checking Lietzau's cell phone text messages to determine whether he was obeying the non-contact condition constituted a proper purpose for the search.  *Cf. Griffin*, 483 U.S. at 875 (stating that "probation serves as a period of genuine rehabilitation and [assures] that the community is not harmed by the probationer's being at large," and "[t]hese same goals require and justify the exercise of supervision to assure that the restrictions are in fact observed").  Camacho did not have to suspect that Lietzau had violated the non-contact condition to perform a cursory search of the messages, both ensuring compliance and deterring future violations.  *Cf. id.* at 876 (analogizing a probation officer to a parent who acts with "the welfare of the probationer" in mind and citing an officer's need to maximize "the deterrent effect" offered by expeditious searches).

¶27        Lietzau was also required to provide the APD access to his residence, participate in counseling and drug testing, and perform community restitution, all of which he failed to do within months after being placed on probation.  The trial court characterized these probation violations as "administrative kinds of things" and implied they played no part in determining whether Camacho's search was reasonable.  We disagree.  These conditions were imposed to rehabilitate Lietzau while ensuring he did not pose a danger to society.  By skipping counseling and evading drug testing, Lietzau presented a presumptive threat for reoffending, thus endangering the community.  He simultaneously prevented the ADP from fully assessing the level of that threat and potentially enhancing its rehabilitative efforts by cutting off access to his residence.  Under these circumstances, checking the cell phone messages to determine whether he was reoffending or otherwise posing a public threat reasonably furthered the goals of rehabilitation and public protection.  *See Samson v. California*, 547 U.S. 843, 854 (2006) (observing that a probationer's incentive to conceal criminality "justifie[s] an 'intensive' system" for supervision (citing *Griffin*, 483 U.S. at 875)).

¶28        We disagree with the trial court that the search was arbitrary. A search is arbitrary, capricious, or harassing if it is "conducted for reasons unrelated to the rehabilitative and reformative purposes of probation or other legitimate law enforcement purposes."  *People v. Bravo*, 738 P.2d 336,

342 (Cal. 1987). Most often, determining whether a search was conducted for a proper purpose will resolve whether the search was arbitrary, capricious, or harassing. But a search directly related to a probation condition can nevertheless be arbitrary, capricious, or harassing if, for example, "motivated by personal animosity" or conducted "too often, or at an unreasonable hour, or if unreasonably prolonged or for other reasons establishing arbitrary or oppressive conduct by the searching officer." *People v. Reyes*, 968 P.2d 445, 451 (Cal. 1998) (citations omitted). Searches conducted under those circumstances do not reasonably relate to the goals of probation. Here, as explained, Camacho had a proper purpose in searching Lietzau's cell phone text messages that furthered the goals of rehabilitating him and protecting the public. *See supra* ¶¶ 24–27. Nothing suggests Camacho was motivated by an improper purpose, and Lietzau does not suggest otherwise.

¶29 Finally, and importantly, Camacho's search of the cell phone did not delve deeper than reasonably necessary to determine whether Lietzau was complying with his probation terms. Although Condition 4 diminished Lietzau's reasonable expectation of privacy in his cell phone, it did not eliminate it. *See Knights*, 534 U.S. at 118, 120. In short, Condition 4 did not grant Camacho carte blanche to indiscriminately search all information accessible by the cell phone. Because a cell phone is a gateway to a massive amount of personal information, *see Riley*, 573 U.S. at 393–95, probationary searches must be limited to data reasonably expected to contain information related to determining a probationer's compliance with probation conditions. The search here stayed within that boundary.

¶30 In sum, under the totality of the circumstances, we hold that Camacho's search of Lietzau's cell phone was reasonable and therefore compliant with the Fourth Amendment. The trial court erred by finding otherwise.

**CONCLUSION**

¶31 We reverse the trial court's order granting the motion to suppress and remand for further proceedings. Although we agree with the court of appeals' disposition, we vacate its opinion to replace it with our own.