COURT OF APPEALS
DECISION
DATED AND FILED

July 26, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP901-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2020CF1483

**IN COURT OF APPEALS
DISTRICT I**

---

STATE OF WISCONSIN,

       PLAINTIFF-APPELLANT,

  V.

FREDERICK W. YOUNG,

       DEFENDANT-RESPONDENT.

---

      APPEAL from an order of the circuit court for Milwaukee County: DANIELLE L. SHELTON, Judge. *Reversed and cause remanded with directions*.

      Before Brash, C.J., Donald, P.J., and Dugan, J.

      **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. The State appeals an order granting a suppression motion filed by Frederick W. Young. The circuit court suppressed the evidence that police found during a warrantless search of Young's home. We conclude that the police, acting under the authority of 2013 Wis. Act 79 and WIS. STAT. § 973.09(1d) (2019-20),[1] properly conducted the search based upon a reasonable suspicion that Young had committed a crime involving the sale of controlled substances. Accordingly, we reverse the suppression order and remand this matter to the circuit court for further proceedings consistent with this opinion.

## Background

¶2 The relevant facts are undisputed. The State filed a criminal complaint charging Young with maintaining a drug trafficking place at a residence in the 3600 block of North 3rd Street in Milwaukee.[2] The complaint reflected that the police, acting without a warrant, searched the residence on April 10, 2020, and found 588.41 grams of marijuana, along with equipment for drying marijuana, packaging materials, scales, a currency counter, mail addressed to Young, and additional documents with Young's name on them.

¶3 Young moved to suppress the evidence found during the search. He acknowledged that Act 79 establishes circumstances under which law enforcement officers may conduct warrantless searches of a person and his or her property and residence if the person is serving a term of community supervision for a felony

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted. Additionally, for ease of reading, we refer to 2013 Wis. Act 79 as Act 79 throughout the remainder of this opinion.

[2] The address in the 3600 block of North 3rd Street is described in the probable cause section of the complaint. Neither party disputes the applicability of that address although a different address is set forth in the charging section.

offense. Further, Young did not deny that he was serving such a term on April 10, 2020, the date of the search. He argued that the search in this case was nonetheless improper because, he contended, the officers lacked reasonable suspicion that he was committing a crime or violating a condition of his supervision at the time of the search.

¶4 The circuit court held a hearing on Young's claim. Two City of Milwaukee police officers, Michael Wagner and Casey Donahue, were the sole witnesses. Both officers described their training and experience in drug investigations, particularly emphasizing their familiarity with hand-to-hand drug transactions. The officers explained that such transactions are brief encounters between two individuals who interact for a few moments, exchange drugs for cash, and then part ways. The officers further testified that, beginning in December 2019, they had received more than twelve tips from an informant, a citizen who lived near the North 3rd Street residence and reported seeing a tall black male with dreadlocks, who appeared to be selling drugs to people in vehicles outside the residence. Donahue went on to testify that the informant had provided photographs and videos "of suspected hand-to-hand drug transactions," as well as text messages about the high volume of traffic in front of the North 3rd Street residence. Additionally, Donahue said that the informant identified Young from a booking photograph as the black male engaged in the suspicious activity.

¶5 Wagner testified that on February 22, 2020, he conducted surveillance of the North 3rd Street residence and observed a tall black male, who matched the informant's description of the suspected drug dealer. The suspect emerged from the North 3rd Street residence, approached a vehicle, leaned into it briefly and exchanged something with the occupant, then went back into the house. Two days later, Wagner and Donahue saw the suspect drive away from the

home. They conducted a traffic stop and identified the suspect as Young, but they took no further action at that time.

¶6     Donahue testified that on April 9, 2020, he received additional information from the informant. According to Donahue, the informant reported that Young was "conducting suspected hand-to-hand drug transactions."

¶7     Both officers testified that on April 10, 2020, they saw Young driving a vehicle, and they stopped him after observing that he was not wearing a seat belt and that the vehicle lacked a front license plate. During the course of the traffic stop, the officers conducted a record check and determined that Young was on supervision with the Department of Corrections for a felony conviction.[3] Donahue then telephoned the informant, who again reported "that he observed suspected hand-to-hand drug transactions within the last [twenty-four] hours."

¶8     Wagner testified that the officers asked Young where he lived, and he replied that he was homeless. Wagner also testified that when he asked Young if the keys hanging from a chain around his neck would provide access to the house on North 3rd Street, Young "tried to act like he didn't know anything about that house." The officers then went to the residence on North 3rd Street, entered it using a key on Young's keychain, and conducted a search. The search uncovered "a large quantity of suspected marijuana."

¶9     At the conclusion of the testimony, the circuit court made findings of fact, largely adopting the testimony of the officers as the factual background for the circuit court's analysis and conclusions. In assessing the facts, the circuit court

---

[3] A record check is part of the ordinary course of a traffic stop. *See* ***State v. Smith***, 2018 WI 2, ¶19, 379 Wis. 2d 86, 905 N.W.2d 353.

noted that the officers had not personally observed Young engaging in any conduct that appeared to be a drug transaction after they completed their surveillance on February 22, 2020; and that the officers had time after ending their surveillance to obtain a search warrant for the residence, but that they did not do so. The circuit court further found that Young had a diminished expectation of privacy because he was serving a term of community supervision but, in the circuit court's view, the officers had improperly used Young's supervision status "to circumvent getting a search warrant." The circuit court found that the police "can't use Act 79 as a way to circumvent getting a warrant.... [T]hat's what happened here." The circuit court therefore entered an order suppressing the evidence found during the search. The State appeals.

**Discussion**

¶10    "The Fourth Amendment to the United States Constitution and Article I, Section 11 of the Wisconsin Constitution prohibit unreasonable searches and seizures." *State v. Artic*, 2010 WI 83, ¶28, 327 Wis. 2d 392, 786 N.W.2d 430. The normal remedy for an unreasonable search or seizure is suppression of the evidence that the police obtained. *See State v. Eason*, 2001 WI 98, ¶2, 245 Wis. 2d 206, 629 N.W.2d 625. When we review a ruling that resolved a suppression motion, we undertake a two-step process in which we review the circuit court's findings of historical fact and then review the application of constitutional principles to those facts. *See id.*, ¶9.

¶11    The first step of our review requires us to "uphold the circuit court's findings of fact unless they are clearly erroneous. A finding of fact is clearly erroneous if it is against the great weight and clear preponderance of the evidence." *State v. Anderson*, 2019 WI 97, ¶20, 389 Wis. 2d 106, 935 N.W.2d 285 (citation omitted). In this case, two police officers testified about the facts

leading up to and surrounding the search. The circuit court did not make any explicit findings about the credibility of those witnesses, but the circuit court's findings of facts were based on the officers' testimony and thus, reflected that the circuit court believed the officers. In the absence of explicit credibility findings, "we assume [the circuit court] made implicit findings on a witness's credibility when analyzing the evidence." *See* ***State v. Quarzenski***, 2007 WI App 212, ¶19, 305 Wis. 2d 525, 739 N.W.2d 844. As with the circuit court's explicit findings, we will not disturb the circuit court's implicit findings unless they are clearly erroneous. *See* ***State v. Boyd***, 2011 WI App 25, ¶8, 331 Wis. 2d 697, 797 N.W.2d 546.

¶12 The second step of our analysis requires us to apply constitutional principles to the facts of record. ***Anderson***, 389 Wis. 2d 106, ¶20. We conduct this analysis "independently of the decisions rendered by the circuit court[.]" ***Id.*** (citation omitted).

¶13 In this appeal, the State contends that the circuit court erroneously suppressed the evidence found in Young's residence because police lawfully searched that residence based on a reasonable suspicion that Young had committed a crime. Normally, law enforcement officers must have probable cause to believe that they will find evidence of a crime before they may perform a full search of a person or the person's property. *See* ***id.***, ¶2. In Act 79, however, the legislature enacted statutes allowing warrantless searches of a person or the person's property based on the lower standard of reasonable suspicion of criminal activity if the person is "on a specified probation, parole, or extended supervision status." *See* ***Anderson***, 389 Wis. 2d 106, ¶2 & n.2. Wisconsin courts describe a search of this kind as "an Act 79 search." *See* ***Anderson***, 389 Wis. 2d 106, ¶18.

6

¶14    As relevant here, Act 79, § 9, created WIS. STAT. § 973.09(1d), which provides, in pertinent part:

> If a person is placed on probation for a felony[,] ... the person, his or her residence, and any property under his or her control may be searched by a law enforcement officer at any time during his or her period of supervision if the officer reasonably suspects that the person is committing, is about to commit, or has committed a crime or a violation of a condition of probation. Any search conducted pursuant to this subsection shall be conducted in a reasonable manner and may not be arbitrary, capricious, or harassing.

Under this provision, law enforcement may conduct a search of a felony probationer's residence if the officer has a reasonable suspicion that the probationer is committing, is about to commit, or has committed a crime, but any such search must be conducted in a reasonable manner and may not be arbitrary, capricious, or harassing.[4]  *See id.*

---

[4] Act 79 created a variety of statutes authorizing law enforcement to conduct a search in circumstances where the target of the search has a specified probation, parole, or extended supervision status; the applicable statute depends on the target's specific status. *See State v. Anderson*, 2019 WI 97, ¶2 & n.2, 389 Wis. 2d 106, 935 N.W.2d 285. In this case, although both Wagner and Donahue testified that they conducted an Act 79 search, Wagner explained that he did so after determining that Young was "on parole" for a 2017 felony conviction, while Donahue testified that he first determined that Young was "on supervision." The circuit court made findings that "the officers did a record check, and they found out that [Young] was on – on probation, or parole, or extended supervision, basically." In this court, Young does not offer an express concession regarding the nature of his supervision status, but, like the State, he cites WIS. STAT. § 973.09(1d), which governs searches of felony probationers, and he indicates that the statute is applicable in his case. The parties thus appear to agree that Wagner misspoke and that Young was on probation for the 2017 felony conviction. The agreement appears well-taken. *Cf. State v. Gallion*, 2004 WI 42, ¶¶7, 33 & n.3, 270 Wis. 2d 535, 678 N.W.2d 197 (explaining that truth-in-sentencing legislation, which applies to offenses committed on or after December 31, 1999, abolished parole in Wisconsin). Accordingly, we treat the implicit agreement as a concession of fact, and we accept it. *See Bergmann v. McCaughtry*, 211 Wis. 2d 1, 7, 564 N.W.2d 712 (1997).

¶15 The parties do not contend that WIS. STAT. § 973.09(1d) is unconstitutional. Accordingly, we do not consider that question.[5] Rather, the parties dispute whether reasonable suspicion existed at the time of the search. We turn to that inquiry.

¶16 "Reasonable suspicion is a fairly low standard to meet." *Anderson*, 389 Wis. 2d 106, ¶33. "An officer has reasonable suspicion if he or she has a suspicion grounded in specific, articulable facts and reasonable inferences from those facts, that the individual has committed a crime." *State v. VanBeek*, 2021 WI 51, ¶52, 397 Wis. 2d 311, 960 N.W.2d 32 (citation and quotation marks omitted). The standard is an objective one, determined under the totality of the circumstances. *See id.* We review independently whether the facts as found by the circuit court constitute reasonable suspicion. *See State v. Young*, 2006 WI 98, ¶17, 294 Wis. 2d 1, 717 N.W.2d 729.

¶17 The circuit court found that, during a five-month period that began in December 2019, an informant made more than a dozen complaints to the police about suspected drug dealing taking place at a specific address on North 3rd Street, an address that the officers had connected to Young. The informant also described a suspect who matched Young's characteristics.

¶18 An informant's tip may contribute to the assessment of reasonable suspicion to support a search under Act 79 even when the record does not reveal the informant's identity and when the police officers receiving the tip do not

---

[5] For the sake of completeness, we note that in *Anderson*, our supreme court concluded that law enforcement may a conduct a "full search" based on reasonable suspicion where the person searched is subject to a statute created by Act 79. *See Anderson*, 389 Wis. 2d 106, ¶¶1-6 & n.2. The *Anderson* opinion does not suggest that either the United States Constitution or the Wisconsin Constitution invalidates such statutes.

explain why they considered the informant reliable and credible. *See Anderson*, 389 Wis. 2d 106, ¶¶7, 41-43, 46. In this case, however, the officers testified that the informant was a person known to them, a man who lived in the neighborhood where the suspicious activity was taking place and who had supported his complaints with videos and photographs of that activity. Accordingly, the informant fits well within the category of "citizen informant," that is, "someone who happens upon a crime or suspicious activity and reports it to police." *See State v. Kolk*, 2006 WI App 261, ¶12, 298 Wis. 2d 99, 726 N.W.2d 337. "[A] citizen informant ... is generally considered among the most reliable informants." *State v. Miller*, 2012 WI 61, ¶31 n.18, 341 Wis. 2d 307, 815 N.W.2d 349. Moreover here, police corroborated the informant's on-going allegations by conducting surveillance on February 22, 2020, and making observations of Young's behavior that the officers recognized as consistent with hand-to-hand narcotics transactions. Police may act on an informant's tips when they bear sufficient indicia of reliability. *See Anderson*, 389 Wis. 2d 106, ¶46 (citation omitted)(explaining that a tip has "recognized 'indicia of reliability'" when officers corroborate the tipster's information). In this case, the tips had ample indicia of reliability because they came from a known source who supplied videos and photographs, and because police earlier corroborated the tips with independent surveillance. Accordingly, the informant's information had objective indicia of reliability.

¶19 Next, we consider the amount of time that passed between the officers' receipt of information about Young's suspicious activities and the date of the search. Here, a lawful search of Young's home on April 10, 2020, did not require a probability that the substantial drug dealing business first reported to police in December 2019, and corroborated with surveillance on February 22, 2020, was still underway six weeks later. Rather, the police needed to satisfy only

9

the lesser standard of reasonable suspicion that criminal activity was occurring or had occurred. *See* WIS. STAT. § 973.09(1d).

¶20 Moreover, the officers testified that, beginning in December 2019, they received more than twelve tips from the informant who identified Young as being involved in hand to hand drug transactions. Further, the informant's reports of drug transactions within the twenty-four hours prior to the search constituted fresh information that Young was involved in on-going drug dealing. Donahue testified that during the traffic stop on April 10, 2020, he telephoned the concerned citizen and the citizen told Donahue that he saw Young involved in a suspected hand-to-hand drug transaction within the last twenty four hours. Donahue further testified that on the day before the traffic stop he received information from a concerned citizen that Young was conducting hand-to-hand drug transactions. As our earlier discussion reflects, that information was particularly reliable because police received it from a person who was known to the officers, who had provided information in the past, who had supported that information with photographs and videos, and whose allegations the officers had previously corroborated. *See State v. Rutzinski*, 2001 WI 22, ¶20, 241 Wis. 2d 729, 623 N.W.2d 516.

¶21 Also relevant to the assessment of reasonable suspicion were Young's evasive responses to the officers' inquiries during the traffic stop. *See State v. Sumner*, 2008 WI 94, ¶39 n.20, 312 Wis. 2d 292, 752 N.W.2d 783 (noting that evasive denials are factors in determining the existence of reasonable suspicion). Young told the officers during the traffic stop that he was homeless, he "tried to act like he didn't know anything about th[e] house" on North 3rd Street, and he indicated that he had no connection to that residence. Police, however, had observed him less than two months earlier coming and going from that address, and they had reports from the informant that Young had engaged in

suspicious activity at that address within the past twenty-four hours. His statements thus directly conflicted with information known to the officers. *See State v. Washington*, 2005 WI App 123, ¶16, 284 Wis. 2d 456, 700 N.W.2d 305 (holding that reasonable suspicion takes into account "those facts known to the officer at the time of the stop"). Young's response to the officers' inquiries therefore added to the quantum of information supporting reasonable suspicion here.

¶22   We conclude that the totality of the circumstances demonstrates the reasonableness of the officers' suspicion that Young had committed a crime involving drug dealing. The information about his suspicious activities that the officers had gathered—including the informant's tips and the officers' corroborating surveillance prior to the traffic stop on April 10, 2020, the additional information that the informant provided during that traffic stop, and Young's efforts to mislead the officers who stopped him—easily satisfied the "fairly low" standard at issue. *See Anderson*, 389 Wis. 2d 106, ¶33.

¶23   Although WIS. STAT. § 973.09(1d) allows law enforcement officers to search the home of a felony probationer if they have a reasonable suspicion that the probationer has committed a crime, the circuit court concluded that the statute did not permit the search of Young's home in this case. The circuit court found that after the officers conducted surveillance on February 22, 2020, they had "enough time to go get a search warrant" but instead, used Act 79 "as a way to

11

circumvent getting a search warrant," and the circuit court concluded that law enforcement "can't use Act 79 to circumvent getting a search warrant[.]"[6]

¶24 We are not persuaded. Although the officers likely could have sought a search warrant before April 10, 2020, WIS. STAT. § 973.09(1d) does not state that a warrant is required unless officers lack the time to obtain one. To the contrary, the statute provides that a law enforcement officer may search a felony probationer's home "at any time ... if the officer reasonably suspects that the [probationer] ... has committed a crime[.]" *Id.* We do not read words that are not there into the text of a statute. *See State v. Fitzgerald*, 2019 WI 69, ¶30, 387 Wis. 2d 384, 929 N.W.2d 165. Moreover, Young does not identify any authority interpreting any provision of Act 79 in conformity with the circuit court's analysis. Indeed, as the State points out, the Supreme Court long ago held that reasonable suspicion is sufficient to allow law enforcement to search the house of a probationer subject to a search condition and therefore, eliminates a warrant requirement. *See United States v. Knights*, 534 U.S. 112, 121 (2001).

¶25 We have considered Young's suggestion that the circuit court's ruling is supported by the provision of WIS. STAT. § 973.09(1d) prohibiting searches that are "arbitrary, capricious, or harassing." The interpretation of statutes and their application to undisputed facts are both questions of law that we

---

[6] We note that, because a search warrant may issue only upon a finding of probable cause, *see State v. DeSmidt*, 155 Wis. 2d 119, 131, 454 N.W.2d 780 (1990), the circuit court's conclusion here that the police should have applied for a warrant reflects an implicit conclusion that the information available to the officers constituted probable cause for a search in this case. Probable cause, however, is a higher standard than reasonable suspicion. *See State v. Eason*, 2001 WI 98, ¶19, 245 Wis. 2d 206, 629 N.W.2d 625. Clearly, if the circuit court concluded that the officers in this case had information sufficient to support a finding of probable cause to believe that Young had engaged in criminal activity, the circuit court also concluded that the officers had information necessary to support the lower standard of reasonable suspicion.

consider independently. *New Richmond News v. City of New Richmond*, 2016 WI App 43, ¶29, 370 Wis. 2d 75, 881 N.W.2d 339.

¶26    Upon review of WIS. STAT. § 973.09(1d), we do not agree that the language on which Young relies supports his contentions. We observe that, although the *Anderson* majority did not construe the statutory language barring "arbitrary, capricious, or harassing" searches, the concurrence opined that the limiting "language would likely preclude random searches" undertaken "in the hopes of catching someone with an Act 79 status." *See Anderson*, 389 Wis. 2d 106, ¶¶66-67 (Hagedorn, J., concurring). We further observe that sister jurisdictions that have considered similar limiting language have not suggested that it implies any consideration of whether law enforcement officers have the time or the opportunity to obtain a warrant. *See, e.g.*, *State v. Lietzau*, 463 P.3d 200, 207 (Ariz. 2020) (holding that "[a] search is arbitrary, capricious, or harassing if it is 'conducted for reasons unrelated to the rehabilitative and reformative purposes of probation or other legitimate law enforcement purposes[,]'" or if the search was "'motivated by personal animosity' or conducted 'too often, or at an unreasonable hour, or if unreasonably prolonged or for other reasons establishing arbitrary or oppressive conduct by the searching officer'" (citations omitted)); *Hess v. State*, 674 S.E.2d 362, 364 (Ga. Ct. App. 2009) (holding that a search is not arbitrary, capricious, or harassing when it is "based on individualized suspicion of specific criminal activity"); *People v. Smith*, 92 Cal. Rptr. 3d 106, 112 (Cal. Ct. App. 2009) (holding that "[w]hether a search is arbitrary, capricious, or harassing turns on its purpose").

¶27    In sum, the record shows that on April 10, 2020, Wagner and Donahue knew that Young was on probation for a felony offense, and they had reasonable suspicion that Young had committed a crime involving drug

trafficking. Pursuant to WIS. STAT. § 973.09(1d), law enforcement officers may search the home of a felony probationer at any time if the officers have reasonable suspicion that the probationer has committed a crime. Although the officers likely could have applied for a search warrant before April 10, 2020, nothing in the plain language of § 973.09(1d) prohibits a warrantless search based on reasonable suspicion in circumstances where the officers had time to seek a warrant. Accordingly, the search was lawful and the fruits of the search should not have been suppressed. For all the foregoing reasons, we reverse the circuit court's order and remand this matter for further proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.